**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAVID BILODEAU and ELIZABETH DUDLEY,
Individually and as representatives of a Class of
Participants and Beneficiaries of the Verizon Savings
Plan for Management Employees,

        Plaintiffs,                         Case No:

        v.

VERIZON COMMUNICATIONS, INC.;
BOARD OF DIRECTORS OF VERIZON
COMMUNICATIONS; VERIZON EMPLOYEE
BENEFITS COMMITTEE,

        Defendants.

---

## CLASS ACTION COMPLAINT

---

Plaintiffs David Bilodeau and Elizabeth Dudley ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the Verizon Savings Plan for Management Employees (the "Verizon Plan" or "Plan"), by their counsel, WALCHESKE & LUZI, LLC and CHIRINOS LAW FIRM, PLLC, as and for a claim against Defendants, alleges and asserts to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION

1. The Employee Retirement Income Security Act ("ERISA") requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and

1

to refrain from "deal[ing] with the assets of the plan" in its own interest.  29 U.S.C. §§ 1104(a)(1), 1106(a)(1)(D), 1106(b)(1).

2.      Plaintiffs bring this ERISA action on behalf of the Verizon Plan under 29 U.S.C. § 1132(a)(2) and Rule 23 of the Federal Rules of Civil Procedure as representatives of a class of participants and beneficiaries of the Plans, against Defendants Verizon Communications, Inc. ("Verizon"), the Board of Directors of Verizon Communications, Inc. ("Board"), and the Verizon Employee Benefits Committee ("Plan Committee") (collectively "Defendants"), for breaching their fiduciary duties and engaging in prohibited transactions with regard to the Verizon Plan.

3.      This Complaint alleges class ERISA fiduciary breach claims based on breaches of loyalty, prudence, monitoring, and for party-in-interest and fiduciary prohibited transactions, based on Defendants' misallocating Plan forfeitures for their own benefit under the Verizon Plan.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

5.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

6.      Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

## PARTIES

7.      Plaintiff David Bilodeau is a resident of the State of Texas, and during the Class Period was a participant in the Verizon Plan under ERISA § 3(7), 29 U.S.C. § 1002(7).

8.     Plaintiff Elizabeth Dudley is a resident of the State of Idaho, and during the Class Period was a participant in the Verizon Plan under ERISA § 3(7), 29 U.S.C. § 1002(7).

9.     Plaintiffs have Article III standing to bring this action on behalf of both the Verizon Plan because they suffered actual injuries-in-fact through the misallocation of Plan forfeitures by Defendants with regard to the Verizon Plans during the Class Period by not having Plan forfeitures utilized to pay their Plan administrative expenses. Those injuries are fairly traceable to Defendants' unlawful conduct in using Plan forfeitures for their own benefit, and those harms are likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiffs and to the Class.

10.     Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), on behalf of the Verizon Plan and for relief that sweeps beyond their own injuries.

11.     The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

12.     Having never managed a very large 401(k) plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should be allocated.

13.     Verizon Communications, Inc. ("Verizon") is one of the largest companies in the world. According to Fortune Magazine, in 2015, Verizon was the fifteenth largest company in the United States and the forty-second largest company in the world as measured by annual revenue. Verizon maintains its principal place of business in New York, New York, at 1095 Avenue of the Americas, New York, NY 10036. In this Complaint, "Verizon" refers to the named Defendants

and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

14.     Verizon acted through its officers, including its Board of Directors and Plan Committee, to perform Plan-related fiduciary functions in the course and scope of their business. Under Section 10.02 of the Verizon Savings Plan for Management Employee, amended and restated, January 1, 2022 ("Plan document"),[1] Verizon and its Board appointed other Plan fiduciaries to the Verizon Plan, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees.  For these reasons, Verizon and its Board are fiduciaries of the Verizon Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

15.     Under Sections 1.01(yy), 10.01, 10.02, and 10.07, of the Plan Document, the Verizon Employee Benefits Committee ("Plan Committee") is the Plan Administrator with day-to-day administration and operation of the Verizon Plan under 29 U.S.C. § 1002(21)(A). The Plan Committee has authority and responsibility for the control, management, and administration of the Verizon Plan in accordance with 29 U.S.C. § 1102(a), with all powers necessary to properly carry out such responsibilities.

16.     Under Section 10.12 of the Plan Document, "the Plan shall be governed by federal law, and to the extent not preempted thereby, by the laws of the State of New York."

17.     With 125,451 participants and $27,825,640,157 in assets under management as of December 31, 2023, the Verizon Savings Plan for Management Employees is one of the largest retirement plans in the country. It ranks in the top 0.01% of over 730,629 retirement plans in terms of the number of participants and the top 0.001% of plans in terms of the value of its assets.

---

[1] The Plan Document is attached hereto in its entirety as **Exhibit 1.**

## ERISA FIDICIARY AND PROHIBITED TRANSACTION STANDARDS

18.     ERISA exists, in large part, to protect the interests of participants, and their bene-ficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

19.     "[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

20.     ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Pearson Plan, that are covered by ERISA.

21.     ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circum-stances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

22.     These fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

23.     The obligation to ensure that retirement plan fees are reasonable is at the heart of ERISA fiduciary duties. *Marshall v. Snyder*, 572 F.2d 894, 897 (2d Cir. 1978) ("The responsibility for paying reasonable compensation was the unequivocal fiduciary responsibility of the [plan's fiduciaries].").

24.    The continuing duty to monitor is a subset of the duty of prudence, *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015), and requires a plan fiduciary to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *See Hughes v. Northwestern University*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting RESTATEMENT (THIRD) OF TRUSTS § 90(c)(3)).

25.    All Defendants are ERISA fiduciaries as they exercise discretionary oversight, authority, or control over the Verizon Plan that Verizon sponsors and administers for the benefit of its employees.

26.    Defendants failed to fulfill their duty to prudently control the manner in which forfeitures were utilized by the Plan.

27.    Verizon is also a party-in-interest because it is an employer "any of whose employees are covered by such plan." *Id.*, § 1002(14)(C).

28.    Because Defendants are fiduciaries of the Plan and "deal[t] with the assets of the plan in [their] own interest or for [their] own account," they violated the fiduciary duty of loyalty and engaged in prohibited transactions under both 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b)(1), by benefiting themselves as far as reducing their own future contributions to the Verizon Plan, making it unnecessary to take money out of their corporate revenues to support the Plan.

## MISALLOCATION OF PLAN FORFEITURES

29.    The fiduciary duties of prudence, loyalty, as well as the duties to refrain from benefitting the company and self-dealing, under ERISA, are violated where, as here, the employer (1) is both the plan sponsor and plan administrator, (2) is faced with a conflict of interest in choosing between allocating plan assets toward offsetting its own contributions to the plan or defraying plan expenses that would otherwise be borne by plan participants, (3) fails to conduct any investigation

as to which choice would be in the best interest of the participants, (4) acts contrary to the express provisions of the Plan, and (5) decides to allocate a portion of those plan assets toward reducing its own plan contributions because that choice best serves its own interests.

30.    Plaintiffs are both "participants" in defined-contribution plans under ERISA Section 3(7), 29 U.S.C. § 1002(7): the Verizon Savings Plan for Management employees.

31.    As an individual account, defined contribution retirement plan, the Verizon Plan provide for individual accounts "for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and loss, and forfeiture of accounts of other participations which may be allocated to such participant's account." 29 U.S.C § 1002(34).

32.    In accordance with 29 U.S.C. § 1103(a), the assets of the Verizon Plan are held in a trust fund.

33.    The Plans are funded by a combination of wage withholdings by Plan participants and Company contributions, each of which is deposited into the Plan's trust funds.

34.    Each participant's account is credited with the participant's (1) their own salary deferral contributions; (2) company matching contributions; (3) employer profit-sharing contributions; (4) Plan earnings; and (5) forfeitures of terminated participants' non-vested accounts.[1]

---

[1] Under Section 1.01(o) of the Plan document, "Company-Matching Contributions" shall mean the amount that the Company and the Participating Affiliates contribute to the Profit-Sharing Plan pursuant to Section 3.03 . . . , and the amount of any forfeitures that are allocated to Members' Accounts on the basis of their Matched Elective Contributions or Matched After-Tax Contributions." Ex. 1, § 1.01(o). In turn, an "Elective Contribution" shall mean a contribution to the Plan by the Company or a Participating Affiliate equal to the amount of Compensation that a Member elects to forgo pursuant to a Compensation Deferral Agreement. A Member's "Elective Contribution" shall be the sum of his Matched Elective Contribution and his Unmatched Elective Contribution. Id, § 1.01(w). On the other hand, "Profit Sharing Contribution" shall mean the amount that the Company and the Participating Affiliates contribute to the Profit-Sharing Plan pursuant to Section 3.12 . . ., including any forfeitures that are allocated to Members' Accounts to offset such contributions." Id., § 1.01(ccc).

35.     Participants in the Verizon Plan are fully and immediately vested with regard to their own contributions and earnings thereon to their individual accounts in the Verizon Plan.

36.     Under Section 4.01(a) of the Plan Document, a Plan participant is "fully vested at all times in his Elective Contributions, After-Tax Contributions, Rollover Contributions, and Transfer Contributions (if any), and any Income thereon."

37.     Under Section 4.01(c) of the Plan Document, "a Member shall be fully vested in the Company-Matching Contributions allocated to his Member's Account . . ., and any Income thereon *upon completing three years of Vesting Service*." *Id.,* § 4.01(c) (emphasis added).

38.     Upon their deposit into the Plans' trust funds, all participant contributions and company contributions become assets of the Plan and under Section 11.01 of hte Plan Document "shall be held for the exclusive benefit of Members and their Beneficiaries and for the payment of reasonable expenses of administering the Plan . . . ."

39.     Under Section 4.02 of the Plan Document, "[a] Member who is not 100% vested in all amounts allocated to his Member's Account . . . shall forfeit the nonvested portion of his Member's Account . . . as soon as administratively practicable after his Termination Date."

40.     In turn, under Section 4.04 of the Plan Document, "any amounts forfeited in accordance with Section 4.02 shall be applied to reduce Company-Matching Contributions and/or any Profit Sharing Contributions to the Plan for the current Plan Year or the Plan Year next following the Plan Year in which the forfeiture occurred **or** shall be used to pay Plan expenses in accordance with Section 10.11(d)." (emphasis added).

41.     The use of the word "or" imbues this Plan language with discretion. So, when the time came to actually exercise the discretion provided by the Plan, to determine whether forfeitures

would be allocated toward Plan administrative expenses or toward reducing Verizon's contributions, those decisions were made in a fiduciary capacity.

42.    In pertinent part, Section 10.11(d) states: "Any remaining expenses of administering the Plan, including the fees and expenses of the Trustee, shall be paid from the Trust except to the extent that such expenses are paid by the Company . . . . *Expenses paid from the Trust shall be paid from forfeitures allocable under Section 4.04 . . .*, and, to the extent not paid from such forfeitures, shall be paid from the Trust and allocated to some or all of the Funds on a pro rata basis." (emphasis added).

43.    Under Section 10.11(a) of the Plan Document dealing with Plan expenses, "[t]he Plan Administrator may from time to time establish periodic 'account maintenance fees' for expenses related to a Member's Accounts under the Plan.  The account maintenance fees, if any, shall be debited from the Accounts of a Member in the manner determined by the Plan Administrator."

44.    Read together, Sections 10.11(a) and 10.11(d) mean that although the Plan Committee is permitted to charge expenses to the administering the Plan to participants in the form of "account maintenance fees," the Plan Committee thereafter has a discretionary decision as to whether to use Plan forfeitures to relieve Plan participants of Plan expenses or to use that money for reducing Verizon's contributions to the Plan.

45.    The November 2024 Plan Participant Fee Disclosure further explains that "Plan administrative fees may include legal, accounting, trustee, recordkeeping, and other administrative fees and expenses associated with maintaining the Plan. Some Plan administrative fees are paid through an annual recordkeeping fee that is deducted from each participant's Plan account. The annual fee is $23 per year. One-fourth of the annual fee ($5.75) is deducted each quarter, but any

remaining quarterly installments will be immediately deducted if you take a full distribution during the year. The recordkeeping fee is deducted on a pro rata basis from all funds in which you are invested. Remaining Plan administrative fees that are paid by the Plan are charged to the Tier 1 and Tier 2 investment options. These remaining fees are included in determining the asset-based fees of each affected investment option. Plan administrative fees may be reduced by credits provided by the Plan trustee/record keeper for the net float income it earns with respect to the Plan."

46.    Verizon must "forfeit the nonvested portion of . . . Member's Account . . . as soon as administratively practicable after [the] Termination Date."

47.    Unless Defendants choose to allocate the forfeitures to "pay Plan expenses," the Plans' administrative expenses are charged to the Plan participants' accounts. Both Plaintiffs paid administrative expenses out of their Plan accounts because Verizon discretionarily decided to reduce future company contributions rather than reduce or eliminate Plan expenses for participants as is permitted under the Plan.

48.    Before November 21, 2023, the forfeitures were not to be first applied to reduce Company-Matching Contributions, but the Plan Committee had a discretionary decision to make as far as whether to use the Plan forfeitures to reduce the Plan expenses for participants or to reduce company-matching contributions. The Plan Committee invariably favored the company by reducing their contributions to the Plan rather than paying Plan expenses for employees.

49.    Effective January 1, 2024, Verizon, through the Second Amendment to the Plan Document, expressly provided that it was amending the Plan to, among other reasons, "provide that forfeitures shall be first applied to reduce Company-Matching Contributions." See Second Amendment to Plan Document, attached hereto as **Exhibit 2**.

50.    More specifically, Section 4.04 of the Plan Document was amended to state:

Effective January 1, 2024, Section 4.04 of the Plan is amended in its entirety to read as follows:

Any amounts forfeited in accordance with Section 4.02 shall be first applied to reduce Company-Matching Contributions and then, if any forfeitures remain thereafter, to reduce any Profit Sharing Contributions to the Plan for the current Plan Year or the Plan Year next following the Plan Year in which the forfeiture occurred.

51.     In other words, only starting in January 1, 2024, did Verizon amend the Plan so that Plan forfeitures could be used to reduce future company Plan contributions.

52.     However, prior to January 1, 2024, Verizon clearly gave its Plan Committee discretion to use Plan forfeitures to pay for Plan expenses for Plan participants. Yet, they reflexively used those forfeitures solely for its own benefit.

53.     During the Class Period alleged herein, each participant's account has been charged, among other things, a fixed amount of at least $23 per year for the Plans' administrative services provided by the Plan recordkeeper, Fidelity.

54.     The deduction of the Plans' administrative expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing, and deprives the Plans of funds that otherwise would have been earned on the amounts deducted.

55.     Yet, the Plan Committee has used its discretion regarding Plan forfeitures to exclusively favor the company every single time between August 26, 2019 and December 31, 2023, by paying employer contributions rather paying Plan expenses, even though they had the discretionary choice to favor the Plans participants by paying Plan expenses which participants instead had to pay.

56.     The Audited Financials to the Verizon forms have identical language in 2019-2020 and then different identical language from 2021-2023, stating how much of the Plan forfeitures were used and for what purpose.  Audited Financial Statement footnotes (attached to Plan 5500

Forms), and signed by an independent third-party auditor, also provide current forfeiture year-end balance and previous year end balance for the Verizon Plan.

57.    The Audited Financials to the Verizon Plan 5500 Forms from 2019 states: "*A terminated employee's non-vested employer-matching and profit sharing contributions are forfeited and offset against subsequent employer-matching and profit sharing contributions to the Plan.* Forfeitures used to reduce employer-matching contributions were $21.9 million for the year ended December 31, 2019. Outstanding forfeitures not yet applied against employer-matching were $32.1 million and $30.8 million at December 31, 2019 and 2018, respectively" (emphasis added).

58.    The Audited Financials to the Verizon Plan 5500 Forms from 2020 state: "*A terminated employee's non-vested employer-matching and profit sharing contributions are forfeited and offset against subsequent employer-matching and profit sharing contributions to the Plan.* Forfeitures used to reduce employer-matching contributions were $31.8 million for the year ended December 31, 2020. Outstanding forfeitures not yet applied against employer-matching contributions were $18.4 million and $32.1 million at December 31, 2020 and 2019, respectively." (emphasis added).

59.    In 2019 and 2020, even though the Plan permitted Plan forfeitures to be used to pay Plan expenses, and the Plan Committee had the discretionary ability to do so, Plan forfeitures were only used to reduce future contributions for the company and not to pay Plan expenses. Such actions by the Committee only benefitted Verizon and not the Plan participants.

60.    A significant change in language occurred in 2021 and continued into 2022 and 2023. Now, the Audited Financials to the Verizon Plan 5500 Forms from 2021 state: "*Forfeited balances of terminated participants' non-vested accounts are used to pay administrative expenses*

*and to reduce future employer-matching contributions and profit sharing contributions*. Forfeitures used to pay certain administrative expenses and used to reduce employer-matching contributions totaled $36.1 million for the year ended December 31, 2021. At December 31, 2021 and 2020, forfeited non-vested accounts totaled $2.6 million and $18.4 million, respectively" (emphasis added).

61.     The Audited Financials to the Verizon Plan 5500 Forms from 2022 state: "*Forfeited balances of terminated participants' non-vested accounts are used to pay administrative expenses and to reduce future employer-matching contributions and profit sharing contributions*. Forfeitures used to pay certain administrative expenses and used to reduce employer-matching contributions totaled $18.9 million for the year ended December 31, 2022. At December 31, 2022 and 2021, forfeited non-vested accounts totaled $1.2 million and $2.6 million, respectively" (emphasis added).

62.     The Audited Financials to the Verizon Plan 5500 Forms from 2023 state: "*Forfeited balances of terminated participants' non-vested accounts are used to pay administrative expenses and to reduce future employer-matching contributions and profit sharing contributions*. Forfeitures used to pay certain administrative expenses and used to reduce employer-matching contributions totaled $17.6 million for the year ended December 31, 2023. At December 31, 2023 and 2022, forfeited non-vested accounts totaled $1.1 million and $1.2 million, respectively" (emphasis added).

63.     It is not clear from the language in the Audited Financials from 2021, 2022, and 2023, what percentage of forfeitures were used to "pay administrative expenses" and what percentage were used  "to reduce future employer-matching contributions and profit sharing contributions."

64.    However, based on the numbers from the 2019 and 2020, where the language concerning the payment of administrative expenses does not appear, it is possible to infer that all or most of the forfeitures were used to "to reduce future employer-matching contributions and profit sharing contributions."

65.    The language in the Audited Financials from 2021-2023 makes clear that the Plan Committee had fiduciary discretion to use the Plans' forfeited funds for employer contributions or to pay the Plans' administrative expenses, but used Plan forfeitures in a discretionary matter mostly to reduce employer contributions. The Plan Committee from 2019-2020 did not use forfeitures at all to reduce the Plan's administrative expenses, and it appears that they either used little or none of Plan forfeiture to reduce the Plan's administrative expenses, which would have benefitted the Plan's participants rather than Verizon.

66.    The following chart shows Verizon's Plan use of forfeiture allocations through December 31, 2023, until the time of the Second Amendment to the Plan Document:

| Forfeitures Used for Employer's Benefit | | | | | | |
|---|---|---|---|---|---|---|
| | **2019** | **2020** | **2021** | **2022** | **2023** | **2024** |
| **Forfeitures Used to Reduce Employer** | $21,900,000 | $31,800,000 | $36,100,000 | $18,900,000 | $17,600,000 | |
| *Compounding Percentage (Plan Return)* | | *13.40%* | *13.41%* | *-17.39%* | *15.33%* | *13.17%* |
| **Potential Cumulative Compounded Losses** | **$21,900,000** | **$56,635,438** | **$100,330,650** | **$101,781,214** | **$134,983,023** | **$152,754,683** |
| **Sources:** | 2019 Form 5500, Page 35 of 49 | 2020 Form 5500, Page 34 of 49 | 2021 Form 5500, Page 34 of 49 | 2022 Form 5500, Page 34 of 49 | 2023 Form 5500, Page 35 of 48 | 2024 Form 5500, Page 37 of 49 |

67.    Using the forfeitures to reduce future employer contributions is usually, but not always, in the best interest of Verizon because that option decreases Verizon's own contribution costs and means that Verizon does not need to take money out of its own general revenues to pay for Plan contributions.

68.     The option to reduce future employer contributions is not always in Verizon's best interest and may be in the best interests of Plan participants where there is a risk that Verizon may be financially unable to satisfy its contribution obligations.

69.     Absent a risk that Verizon would be unable to satisfy its contribution obligations under the Verizon Plan, however, using forfeitures to "pay Plan expenses" would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such administrative expenses.

70.     In deciding between using the forfeiture to benefit Verizon or using the forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of their assets.

71.     Despite the conflict of interest presented by this decision, Defendants failed to undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries.

72.     Defendants did not, for example, investigate whether there was a risk that Verizon would default on its contribution obligations if forfeitures were used to pay the Plan's administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan's administrative expenses charged to participants and still offset a portion of Verizon's own contribution obligations, as a prudent person would have done.

73.     Defendants also failed to consult with an independent non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

74.     Although ERISA requires Defendants to defray the Plan's expenses, see 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Verizon Plan permitted Defendants to use the forfeited funds

to pay reasonable administrative expenses rather pay company contributions through at least December 31, 2023, throughout the Class Period Defendants consistently and reflexively declined to use forfeited funds for to pay Plan expenses, instead using the Plan's forfeitures to reduce the amount of money it had to take out of its general revenues and corporate treasuries to support the maintenance of the Verizon Plan.

75.    For each year between 2019 and 2023, Verizon was under no risk of defaulting on its contribution obligations to the Plan.  Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate forfeitures solely on their own self-interest and failed to consider the interests of the Plan and its participants.

76.    While Defendants' decisions to use the Plan's forfeitures to reduce its outstanding and unpaid contributions benefitted the Company by lowering its costs, it harmed the Plan, along with its participants and beneficiaries, by reducing the amount of assets the Plans otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by the Plan's forfeitures.

77.    Defendants misallocation of the Plan's forfeitures can be divided into two separate breach of fiduciary violations: (1) inappropriately utilizing forfeitures to offset employer contributions instead of paying Plan expenses; and (2) not exhausting forfeiture balances by year-end.

## VERIZON'S DISLOYAL USE OF PLAN FORFEITURES

78.    ERISA explicitly requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

79.     Furthermore, in deciding to use the Plan's forfeitures to benefit itself as far as reducing company contributions through use of the Plan's assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

80.     IRS guidance regarding the reduction of employer contributions through use of plan forfeitures either do not speak to prohibited transactions, have been superseded by more recent guidance, only exist in the form of proposed regulations, and/or do not apply to private actions based on Department of Labor fiduciary duties but only to IRS audits.

81.     ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

82.     Despite the conflict of interest presented by the decision to use Verizon Plan's forfeitures for Verizon's own benefit, Defendants failed to undertake any prudent investigation into which option the most prudent action to take.

83.     At the very least, Defendants should have used the fiduciary discretion granted to it prior to January 1, 2024, to pay Plan expenses first to serve the best interest of Plan participants. Defendants' fiduciary decision with regard to the Verizon Plan cost the Plans' participants over $49 million dollars from 2019 through 2023:

**Failure to Use Forfeited Plan Assets to Defray Reasonable Plan Expenses**

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Plan Expenses via Direct Comp | $7,183,910 | $8,083,490 | $7,901,743 | $9,430,580 | $7,512,672 | |
| Available Forfeitures | $54,000,000 | $18,100,000 | $20,300,000 | $17,500,000 | $17,500,000 | |
| **Forfeitures Not Used to Defray Reasonable Plan Expenses** | **$7,183,910** | **$8,083,490** | **$7,901,743** | **$9,430,580** | **$7,512,672** | |
| Compounding Percentage (Plan Return) | | 13.40% | 13.41% | -17.39% | 15.33% | 13.17% |
| **Compounded for Lost Earnings** | **$7,183,910** | **$16,230,319** | **$26,308,662** | **$31,163,658** | **$43,453,336** | **$49,174,336** |

84.    While Defendants' reallocation of the forfeitures in the Plan's trust funds to reduce its future contributions benefitted Verizon by reducing its own contribution expenses and allowing it not to take additional monies out of its general revenues or corporate treasury, it harmed the Verizon Plan, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plans' assets and by causing participants to incur deductions of administrative expenses from their individual accounts.

85.    Defendants received a benefit while participants simply received that which they would have received anyway, while remaining on the hook for paying their share of the Plans' administrative expenses.

86.    Defendants should have had a fiduciary process in place to determine the best manner to use Plans' forfeitures under their fiduciary duty of prudence. Defendants had no such procedures, or ineffective procedures, in place given the imprudent manner in which the Plan's forfeitures were utilized for Verizon's own benefit.

87.    Furthermore, in deciding to use the Plan's forfeitures to benefit itself as far as reducing future company contributions through use of the Plan's forfeitures, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets.

88.    Such benefiting of the party-interest employer and self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

89.    By allocating forfeitures toward offsetting employer contributions, and saving Verizon millions of dollars in Plan contributions, Defendants benefitted Verizon, a "party in interest," and also dealt with the assets of the Plans in their own interest and for their own account in violation of both party-in-interest and prohibited transaction rules.

90.    Defendants' conduct amounts to a "transaction" between the Plan Committee and Verizon itself, insofar as Verizon benefitted from the Plan Committee's decisions to use the Plan's forfeitures exclusively to reduce Verizon's contributions to the Plan and thus, allowed it to save its own money by not having to take additional funds out of its corporate treasury.

91.    The movement of the Plan's forfeitures is not just within the Verizon Plan, but a movement of funds that leads to Verizon not having to engage in a transaction by which its corporate general revenues are needed to fund its contributions to the Verizon Plan.

92.    Allocating forfeitures to reduce employer contributions provides a direct financial benefit to a party-in-interest, and therefore is not neutral. It also amounts to fiduciary self-dealing because done by the employer-fiduciary, Verizon, and constitutes a prohibited transaction under both §§ 406(a)(1)(D) and 406(b)(1).

**TIMELY EXHAUSTION OF FORFEITURE ACCOUNTS**

93.    The Verizon Plan itself, as well as IRS guidance, make clear that the Verizon Plan should have allocated all of the Plan's forfeitures  "no later than the end of the Plan Year immediately following the Plan Year in which the Forfeiture occurred." Plan Document, § 4.02 ("A Member who is not 100% vested in all amounts allocated to his Member's Account . . . shall forfeit the nonvested portion of his Member's Account . . . *as soon as administratively practicable* after his Termination Date.").

94.     In its Retirement News for Employers Newsletter from Spring 2010, the IRS published an article entitled "*Fixing Common Plan Mistakes: Improper Forfeiture Suspense Accounts*," discussing IRS Publication 4278-B (2010), p4278.pdf (irs.gov).

95.     In pertinent part, that article states that "[f]orfeitures must be used or allocated in the plan year incurred. *The Code does not authorize forfeiture suspense accounts to hold unallocated monies beyond the plan year in which they arise*." (emphasis added).

96.     "Revenue Ruling 80-155 states that a defined contribution plan will not be qualified unless all funds are allocated to participants' accounts in accordance with a definite formula defined in the plan. This would preclude a plan from carrying over plan forfeitures to subsequent plan years, as doing so would defy the rule requiring all monies in a defined contribution plan to be allocated annually to plan participants."

97.     The same article states that "[t]he plan document's terms should have provisions detailing how and when a plan will exhaust plan forfeitures. A plan's failure to use forfeitures in a timely manner denies plan participants additional benefits or reduced plan expenses."

98.     The IRS concludes that "this failure can be corrected by reallocating all forfeitures in the plan's forfeiture suspense account to all plan participants who should have received them had the forfeitures been allocated on time."

99.     Consequently, both the Plans' language and IRS guidance make clear that Verizon was required to monitor plan forfeitures and exhaust such forfeitures on a yearly basis.

100.    Accordingly, on December 31st of each year, the contributions that have accrued throughout the prior calendar year become outstanding and unpaid amounts owing to the Plan.

101.    If a suspense account is used, as it was with the Verizon Plan, then Verizon should have ensured that all forfeitures for the Plan years were promptly exhausted by year end or close to year end.

102.    Defendants violated their fiduciary duty of prudence by not using their forfeiture suspense account as instructed by the Plan and the IRS, thereby causing Plaintiffs and other of the Plan's members to be denied additional benefits and/or reduced Plan expenses.

103.    As shown in the chart below, Plaintiffs seeks $7.5 million in losses from 2019-2023, caused by Defendants' imprudence in failing to exhaust Plan forfeiture suspense accounts in a timely manner at the end of each year:

| Forfeiture End of Year Balances | | | | | | |
|---|---|---|---|---|---|---|
| | **2019** | **2020** | **2021** | **2022** | **2023** | **2024** |
| **Forfeiture Balance EOY** | $32,100,000 | $18,400,000 | $2,600,000 | $1,200,000 | $1,100,000 | |
| **Forfeiture Annual Losses** | $0 | $4,302,628 | $2,467,570 | -$452,190 | $183,945 | |
| *Compounding Percentage (Plan Return)* | | 13.40% | 13.41% | -17.39% | 15.33% | 13.17% |
| **Potential Cumulative Compounded Losses** | $0 | $4,302,628 | $7,347,211 | $5,617,199 | $6,662,192 | $7,539,326 |
| Sources: | 2019 Form 5500, Page 35 of 49 | 2020 Form 5500, Page 34 of 49 | 2021 Form 5500, Page 34 of 49 | 2022 Form 5500, Page 34 of 49 | 2023 Form 5500, Page 35 of 48 | 2024 Form 5500, Page 37 of 49 |

## CLASS ACTION ALLEGATIONS

104.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

105.    In acting in his representative capacity for the Verizon Plan, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Verizon Plan.

106.    Plaintiff seeks to certify, and to be appointed as representative of, the following Class:

> All participants and beneficiaries of the Verizon Savings Plan for Management Employees (excluding the Defendants or any participant/beneficiary

who is a fiduciary to the Plan) beginning August 26, 2019, and running through December 31, 2023.

107.    The Class includes approximately 125,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

108.    There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Verizon Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

   a.    Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

   b.    Whether Defendants breached their fiduciary duties to the Plan and engaged in prohibited transactions;

   c.    What are the losses to the Plan resulting from each breach of fiduciary duty and prohibited transaction; and

   d.    What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of fiduciary duty and prohibited transactions.

109.    Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were a participant of the Verizon Plan during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

110.    Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plans during the Class period, have no interests that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

111.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish

incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

112.    Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

113.    Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

114.    The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and do not involve mismanagement of individual accounts.

115.    The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

116.    Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of the Plan for breaches of fiduciary duty or for prohibited transactions.

117.    Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the plan.

118.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan's Administrator) are the same individuals that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a plan administrator's decisions – does not exist here because courts will not defer to plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**Breach of Duty of Loyalty**
**Plaintiffs, on behalf of themselves and Class, Against Plan Committee**
**(Misallocation of Plans' Forfeitures)**

119.     Plaintiffs restate the above allegations as if fully set forth herein.

120.     Defendant Plan Committee is a fiduciary of the Verizon Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

121.     Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendant Plan Committee was required to discharge their duties to the Verizon Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

122.     Defendant Plan Committee has continually breached this duty of loyalty with respect to their control and management of the Verizon Plan's assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the exclusive benefit of Verizon rather than solely in the interest of the Plan's participants and beneficiaries.

123.     Instead of acting solely in the interest of the Plan's participants by utilizing forfeited funds in the Plan to reduce or eliminate Plan expenses, Defendant Plan Committee chose to use the Plan's assets for the exclusive purpose of reducing Verizon's contributions to the Plan, thereby

saving Verizon tens of millions of dollars at the expense of the Plan and their participants, who were forced to incur avoidable Plan expense deductions to their individual accounts.

124.    In making these Plan forfeiture decisions, Defendant Plan Committee was motivated primarily or exclusively by their own self-interest rather than the interests of the Plan's participants and beneficiaries, in violation of ERISA's fiduciary duty of loyalty.

125.    As a direct and proximate result of Defendant Plan Committee's fiduciary breaches described herein, the Plan suffered injury and loss for which they are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

## SECOND CLAIM FOR RELIEF
### Breach of Duty of Prudence
### Plaintiffs, on behalf of themselves and Class, Against Plan Committee
### (Misallocation of Plan Forfeitures)

126.    Plaintiffs restate the above allegations as if fully set forth herein.

127.    Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant Plan Committee was required to discharge their duties with respect to the Verizon Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

128.    Defendant Plan Committee has continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by declining to use the forfeited funds in the Plan to eliminate or reduce the Plan expenses charged to participant accounts, and instead used the Plan's forfeitures to reduce Verizon' contributions to the Plan.

129.    In deciding how to allocate forfeitures, Defendant Plan Committee utilized an imprudent and flawed process.  Despite the conflict of interest presented by their forfeitures allocation

decisions, Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own contributions,  as opposed to the Plan expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these forfeiture assets after considering all relevant factors.

130.    By refusing to use forfeited funds in the Plan to eliminate or reduce the Plan expenses charged to participant accounts, and instead deciding to use the Plan's  forfeiture  to reduce Verizon's own contributions to the Plan, Defendant Plan Committee caused the Plan to receive fewer contributions that would otherwise have increased Plan's assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses, as discretionarily permitted under the Plan Document.

131.    Defendant Plan Committee also breached their duty of prudence by failing to follow the Verizon Plan itself, as well as IRS guidance, both of which make clear that the Verizon Plan should have allocated  all of the Plan's forfeitures by the end of each Plan year.

132.    On December 31st of each year, the Plan forfeitures that  accrued throughout the prior calendar year become outstanding and unpaid amounts owing to the Plan.

133.    Both the Plan's language and IRS guidance make clear that Verizon was required to monitor plan forfeitures and exhaust such forfeitures on a yearly basis. If a suspense account is used, as it was with the Verizon Plan, then Verizon should have ensured that all forfeitures for the Plan years were promptly exhausted by year end or close to year end.

134.    Defendant Plan Committee violated their fiduciary duty of prudence by not using their forfeiture suspense account as instructed by the Plan and the IRS, thereby causing Plaintiffs and other of the Plan's members to be denied additional benefits and/or reduced Plan expenses.

135.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

**THIRD CLAIM FOR RELIEF**
**Fiduciary Prohibited Transactions**
**Plaintiffs, on behalf of themselves and Class, Against Plan Committee**
**(Self-Dealing with Forfeitures)**

136.    Plaintiffs restate the above allegations as if fully set forth herein.

137.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

138.    Defendant Plan Committee violated this prohibition in its management and control of forfeitures in the Plan.  By allocating these Plan's assets toward reducing Verizon's contributions owing to the Plan, thereby saving Verizon tens of millions of dollars in contribution expenses from their own corporate treasury, Defendant Plan Committee dealt with the assets of the Plan in Verizon's own interest and for their own account.

139.    Defendant Plan Committee's reallocation of plan assets to reduce Verizon's own contribution is a 'use' of plan asserts for the purposes of § 1106(a)(1).

140.    As a result of this prohibited conduct, Defendant Plan Committee caused the Plan to suffer losses in the amount of the Plan's assets that were substituted for employer contributions and the lost investment returns on those assets.

141.    Each member of the Defendant Plan Committee is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan's assets and is subject to other equitable or remedial relief as appropriate.

### FOUTH CLAIM FOR RELIEF
### Party-In-Interest Prohibited Transactions
### Plaintiffs, on behalf of themselves and Class, Against Plan Committee
### (Benefitting Employer)

142.    Plaintiffs restate the above allegations as if fully set forth herein.

143.    29 U.S.C. § 1106(a)(1)(D) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect - transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

144.    Defendant Plan Committee, as fiduciaries of the Verizon Plan, caused the Plan to engage in a transaction that used the assets of Plan for the benefit of a party in interest, Verizon, by using Plan's forfeitures to reduce the future employer contributions of Verizon during the Class Period.

145.    Defendant Plan Committee's reallocation of plan assets to reduce its own contribution is "dealing with" plan assets for the purposes of § 1106(b)(1).

146.    By allocating Plan forfeitures to be used for the benefit of reducing future employer contributions, Defendant Plan Committee misused tens of millions of dollars of Plan forfeitures which could have been reallocated instead to pay Plan expenses.

147.    Each member of the Defendant Plan Committee is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan's assets and is subject to other equitable or remedial relief as appropriate.

## FIFTH CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries
### Plaintiffs, on behalf of themselves and Class, Against Defendants Company and Board
### (Misallocation of Forfeitures and Self-Dealing)

148.    Plaintiffs restate the above allegations as if fully set forth herein.

149.    Defendants Verizon and Board had the authority to appoint and remove members or individuals responsible for Plan's forfeitures and knew or should have known that these fiduciaries had critical responsibilities for the Plans.

150.    In light of this authority, Defendants Verizon and Board had a duty to monitor those individuals responsible for Plan's forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Verizon Plan in the event that these individuals were not fulfilling those duties.

151.    Defendants Verizon and Board had a duty to ensure that the individuals responsible for Plan's forfeitures on the Plan Committee possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Verizon Plan's forfeitures; and reported regularly to Defendants.

152.    The objectively disloyal, imprudent, and conflicted manner in which Defendants Verizon and Board handled the Plan's forfeitures inferentially establish that Defendants Verizon and Board breached their duty to monitor by, among other things:

        a.    Failing to monitor and evaluate the performance of individuals responsible for the Plan's forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the Verizon Plan misallocated the Plan's forfeiture for Verizon's benefit;

      b.    Failing to monitor the process by which individuals responsible for the Plan's forfeitures were evaluated and failing to investigate the proper use of Plan's forfeitures; and

      c.    Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures for the benefit of Verizon.

153.    As the consequences of the breaches of the duty to monitor for the Plan's forfeitures, the Plaintiffs and the Plan's participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

154.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants Verizon and Board are liable to restore to the Verizon Plan all losses caused by their failure to adequately monitor individuals responsible for Plan's forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

    A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

    B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

    C.    A Declaration the Defendants have breached their fiduciary duties and engaged in prohibited transactions under ERISA;

    D.    An Order compelling the Defendants to make good to the Verizon Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty and prohibited transactions, including restoring to the Plan all losses resulting from misallocation of Plan forfeitures, and restoring to the Plan all profits the Defendants made through use of the Verizon Plan's assets, and restoring to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations and not engaged in prohibited transactions;

    E.    An Order requiring Verizon to disgorge all profits received from, or in respect of, the Verizon Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the

form of an accounting for profits, imposition of constructive trust, or surcharge against Verizon as necessary to effectuate relief, and to prevent Verizon's unjust enrichment;

F.    An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties or from engaging in prohibited transactions;

G.    Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary to administer the Verizon Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties or engaged in prohibited transactions;

H.    An award of pre-judgment interest;

I.    An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.    Such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Date: August 26, 2025                     **CHIRINOS LAW FIRM, PLLC**

*/s/ Nicole M. Cvercko*
Nicole M. Cvercko, Bar No. 6050629
11 Broadway Ste 615
New York, NY 10004-1490
Telephone: (646) 559-9952
ncvercko@chirinoslawfirm.com

Tulio D. Chirinos (*pro hac vice* forthcoming)
370 Camino Gardens Blvd, Suite 106
Boca Raton, FL 33432
Telephone: 561-299-6334
tchirinos@chirinoslawfirm.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda (*pro hac vice* forthcoming)
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*