**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID BILODEAU and ELIZABETH DUDLEY, Individually and as representatives of a Class of Participants and Beneficiaries of the Verizon Savings Plan for Management Employees,

*Plaintiffs*,

v.

VERIZON COMMUNICATIONS, INC.; BOARD OF DIRECTORS OF VERIZON COMMUNICATIONS; VERIZON EMPLOYEE BENEFITS COMMITTEE,

*Defendants*.

Case No. 1:25-cv-07057

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

A. The Plan ..... 3

B. The Treatment of Forfeited Benefits Under the Plan ..... 4

C. Plaintiffs' Claims ..... 6

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

I. Plaintiffs Fail to State a Claim Against the Committee for Breach of Fiduciary Duty ..... 7

A. ERISA Does Not Require Forfeitures to Be Used to Pay Administrative Expenses. ..... 7

1. ERISA Imposes No Fiduciary Obligation to Maximize Pecuniary Benefits. ..... 8

2. Plaintiffs' Theory of Fiduciary Duties Contravenes Decades of Legislative and Administrative History. ..... 10

B. Plaintiffs Allege No Nonconclusory Facts to Support Their Breach of Fiduciary Duty Claims. ..... 13

1. Plaintiffs Plead No Facts Plausibly Supporting Their Disloyalty Claim. ..... 13

2. Plaintiffs Plead No Facts in Support of Their Imprudence Claim. ..... 16

3. The Committee's Purported Failure to Allocate Forfeitures by Year-End Does Not Support a Claim. ..... 17

C. Plaintiffs' Theory Does Not Implicate the Committee's Fiduciary Duties. ..... 20

1. Funding a Plan Is a Settlor, Not a Fiduciary, Function. ..... 20

2. Plaintiffs' Invocation of the Committee's "Allocation" Decisions Cannot Save Their Claims. ..... 21

D. Plaintiffs Do Not Allege a Plan Injury. ..... 22

II. Plaintiffs Fail to State a Claim Against the Committee for Violation of ERISA's Prohibited Transactions Provisions........ 23

III. Plaintiffs Have Failed to State a Claim Against Verizon and the Board for Failure to Monitor Fiduciaries........ 26

CONCLUSION........ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
2025 WL 2645518 (D. Ariz. Sept. 15, 2025) ..... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 7

*Bruno v. Metro. Transp. Auth.*,
544 F. Supp. 2d 393 (S.D.N.Y. 2008) ..... 7

*Cain v. Siemens Corp.*,
2025 WL 2172684 (D.N.J. July 31, 2025) ..... 10

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ..... 22

*CFTC v. Schor*,
478 U.S. 833 (1986) ..... 12

*In re Citigroup ERISA Litig.*,
2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ..... 21

*Coulter v. Morgan Stanley & Co.*,
753 F.3d 361 (2d Cir. 2014) ..... 13, 16, 20

*Curtis v. Aetna Life Ins. Co.*,
2021 WL 1056785 (D. Conn. Mar. 18, 2021) ..... 8

*Diaz v. Westco Chems., Inc.*,
2023 WL 3615663 (9th Cir. May 24, 2023) ..... 23

*Dimou v. Thermo Fisher Sci. Inc.*,
2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ..... *passim*

*Donelson v. Meijer, Inc.*,
2025 WL 3754241 (W.D. Mich. Dec. 29, 2025) ..... 9, 18, 25

*Estay v. Ochsner Clinic Found.*,
2025 WL 2644782 (E.D. La. Sept. 15, 2025) ..... 17, 26

*Gagliano v. Reliance Standard Life Ins. Co.*,
547 F.3d 230 (4th Cir. 2008) ..... 8

*Garner v. Northrop Grumman Corp.*,
2025 WL 3488657 (E.D. Va. Dec. 4, 2025) ....................19

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)....................12

*Hannan v. Hartford Fin. Servs., Inc.*,
688 F. App'x 85 (2d Cir. 2017) ....................24

*Horvath v. Keystone Health Plan E., Inc.*,
333 F.3d 450 (3d Cir. 2003)....................23

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) .................... *passim*

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) .................... *passim*

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008)....................22

*Liberian Community Ass'n of Conn. v. Lamont*,
970 F.3d 174 (2d Cir. 2020)....................23

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996).................... *passim*

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) ....................9

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
2025 WL 1299002 (C.D. Cal. May 2, 2025) ....................24

*Massaro v. Palladino*,
19 F.4th 197 (2d Cir. 2021) ....................2, 13

*McManus v. Clorox Co.*,
2025 WL 732087 (N.D. Cal. Mar. 3, 2025)....................15

*McWashington v. Nordstrom, Inc.*,
2025 WL 1736765 (W.D. Wash. June 23, 2025)....................1

*Middleton v. Amentum Parent Holdings, LLC*,
2025 WL 2229959 (D. Kan. Aug. 5, 2025) ....................10

*Nicolas v. The Trustees of Princeton Univ.*,
2017 WL 4455897 (D.N.J. Sept. 25, 2017) ....................26

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......... 13, 20, 21

*Perez-Cruet v. Qualcomm Inc.*,
2024 WL 2702207 (S.D. Cal. May 24, 2024) .......... 12

*Perlman v. Fidelity Brokerage Servs. LLC*,
932 F. Supp. 2d 397 (E.D.N.Y. 2013) .......... 18

*Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*,
2015 WL 13917970 (C.D. Cal. July 28, 2015) .......... 21

*Polanco v. WPP Grp. USA, Inc.*,
2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025) .......... *passim*

*Revitalizing Auto Communities Env't Response Trust v. Nat'l Grid USA*,
92 F.4th 415 (2d Cir. 2024) .......... 7

*Rinehart v. Lehman Bros. Holdings Inc.*,
817 F.3d 56 (2d Cir. 2016) .......... 26

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) .......... 12

*Seabury v. City of New York*,
2006 WL 1367396 (E.D.N.Y. May 18, 2006) .......... 18

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
780 F. Supp. 3d 870 (D. Ariz. 2025) .......... 3, 16, 25

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
135 F. Supp. 3d 219 (S.D.N.Y. 2015) .......... 7

*Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Lcl. 1M Health & Welfare Plan v. Bjorkedal*,
516 F.3d 719 (8th Cir. 2008) .......... 20

*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013) .......... 8

**Statutes and Regulations**

29 U.S.C. § 1002 .......... 3, 11

29 U.S.C. § 1106 .......... 24, 25

Pub. L. 93-406, tit. I, § 3, 88 Stat. 829 (1974) .......... 11

26 C.F.R. § 1.401-7 .......... 11

26 C.F.R. § 1.401 ........................................................................................................11, 14

83 Fed. Reg. 34,469 (July 20, 2018).............................................................................................12

88 Fed. Reg. 12,282 (Feb. 27, 2023) ..................................................................................11, 12, 19

## PRELIMINARY STATEMENT

Plaintiffs amended complaint ("FAC") once again seeks to bar the longstanding practice—acknowledged by Congress, the U.S. Treasury Department, and the U.S. Department of Labor—of using benefits forfeited by participants in a 401(k) plan to provide benefits to other participants in the plan in the form of employer contributions. Plaintiffs contend that it is illegal to use forfeitures to cover the cost of employer contributions under the Employee Retirement and Income Security Act of 1974 ("ERISA"), but this position flies in the face of basic tenets of ERISA jurisprudence, decades' worth of regulatory guidance, and the case law of this District.

To be clear, there is no dispute that participants in Defendants' retirement plan—the Verizon Savings Plan for Management Employees (the "Plan" or the "Verizon Plan")—have received all of the benefits they are due under the terms of the Plan. Instead, Plaintiffs assert that the Plan's fiduciaries had an obligation to try to coerce the Plan's sponsor, Verizon Communications Inc. ("Verizon" or the "Company"), to contribute *more* money to the Plan by allocating forfeitures to cover the cost of the Plan's expenses. This theory of liability has been rejected by nearly every court that has considered it. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *3–9 (S.D.N.Y. Oct. 27, 2025); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024) ("*Hutchins I*"); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *14 (W.D. Wash. June 23, 2025). As these courts have recognized, Plaintiffs' theory imposes an "unqualified duty" on employers to provide benefits that were never contemplated by the plan document, contradicting foundational ERISA principles. *Hutchins I*, 737 F. Supp. 3d at 863. The theory also contravenes "the settled understanding of Congress and the Treasury Department . . . which [have] historically allowed the use of forfeitures . . . to reduce employer contributions." *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024). Based on these precedents, Judge Koeltl recently dismissed substantially identical ERISA

claims, concluding that a "fiduciary does not violate [ERISA] merely by following the explicit terms of a plan document that permits the use of forfeitures to fund employer contributions." *Polanco*, 2025 WL 3003060, at *6. The same logic applies in this case.

Even crediting Plaintiffs' misinterpretation of ERISA, Plaintiffs fail to allege any well-pleaded facts in support of their erroneous construction of the statute. For example, Plaintiffs contend that the Plan's fiduciaries face a "conflict of interest" in administering the Plan because they are purportedly incentivized to release Verizon from its "obligations" to fund the Plan. *See, e.g.*, FAC ¶¶ 89–90. Verizon, however, has no such funding "obligations." Plaintiffs' conflicting argument rests on a misreading of the Plan document, which—contrary to Plaintiffs' assertion—expressly permits the Company to fund the Plan through forfeitures, which is precisely what Verizon has allegedly done.

Plaintiffs' breach of fiduciary duty and failure to monitor claims also fail because such claims do not implicate Defendants' fiduciary duties. It is well established that employers who sponsor ERISA plans wear "two hats" in the ERISA context: a "fiduciary hat," which the employer wears when administering the plan for the benefit of plan participants, and a "settlor" hat, which the employer wears when making settlor decisions, such as establishing, designing, funding, or terminating the plan. *Massaro v. Palladino*, 19 F.4th 197, 211–12 (2d Cir. 2021). Here, the crux of Plaintiffs' claims is that the Plan's fiduciaries "caused" Verizon to make "fewer contributions" to the Plan, FAC ¶ 190, but determining the amount of money that an employer will contribute to a plan is a settlor decision that does not implicate an administrator's fiduciary duties, *see Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 922 (N.D. Cal. 2025) ("*Hutchins II*").

Finally, Plaintiffs allege that the Plan's fiduciaries violated ERISA's prohibited transactions provisions by using forfeitures to pay benefits instead of expenses. It is well

established, however, that using plan assets to pay benefits is not a "transaction" prohibited under ERISA. *Lockheed Corp. v. Spink*, 517 U.S. 882, 892–93 (1996). For this reason, courts routinely reject prohibited transactions claims based on the use of forfeitures to pay benefits. *See, e.g.*, *Polanco*, 2025 WL 3003060, at *9–11; *Hutchins I*, 737 F. Supp. 3d at 867–69; *Dimou*, 2024 WL 4508450, at *11; *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 881 (D. Ariz. 2025).

For these and other reasons, Plaintiffs' claims should be dismissed.

## BACKGROUND

### A. The Plan

The Verizon Plan is a defined contribution plan funded by a combination of participant and employer contributions. FAC ¶¶ 43, 48. The Plan's assets are held in a dedicated trust fund and allocated to individual participant accounts. *Id.* ¶¶ 45–46. A participant's benefit under the Plan consists of the participant's contributions to his account, Verizon's contributions to his account, and "any income, expenses, gains and losses, and any forfeitures" that may be allocated to his account. 29 U.S.C. § 1002(34); *see* FAC ¶ 49.

Under the terms of the Plan, Verizon serves as Plan sponsor and, in that capacity, performs various "settlor" functions, such as funding the Plan. FAC ¶ 47. The Verizon Employee Benefits Committee (the "Committee") serves as the Plan administrator and is charged with the "day-to-day administration and operation of the Verizon Plan." *Id.* ¶ 15.[1]

[1] In their FAC, Plaintiffs sometimes refer to Defendants collectively, although their substantive claims are pled against specific defendants. *See* FAC ¶¶ 179–214 (alleging breach of fiduciary duty and prohibited transactions claims against the Committee only and a failure to monitor claim against Verizon and its board of directors only). Because Plaintiffs do not assert any claims involving fiduciary duties against Verizon and its board, Defendants understand all allegations about fiduciary duties and actions to be pled against the Committee only.

Like all 401(k) plans, the Verizon Plan incurs various administrative expenses, including legal, accounting, trustee, recordkeeping, and other fees associated with maintaining the Plan. *Id.* ¶ 3. Under the terms of the Plan document, Verizon may elect to pay the Plan's expenses, or alternatively, expenses may be charged to participants' accounts. *Id.* ¶ 56; *see also* Declaration of William O'Neil ("O'Neil Decl."), Ex. A (2015 Plan), § 10.11(d); Ex. B (2022 Plan), § 10.11(d). Between 2019 and 2023, at least some portion of the Plan's administrative expenses were charged to participants' accounts, in accordance with the Plan's terms. FAC ¶¶ 75–76, 78–80.

**B. The Treatment of Forfeited Benefits Under the Plan**

Participants in the Plan are immediately vested in any amounts they contribute to their individual accounts. *Id.* ¶ 50. Participants become fully vested in Verizon's contributions to their accounts after three years of benefit service. *Id.* ¶ 53.

When a participant has a break in service prior to fully vesting in his account, the Plan specifies that the participant forfeits any unvested Company contributions that have been allocated to his account. *Id.* ¶ 55. These old employer contributions remain in the Plan's trust fund, where they can be reallocated. Pursuant to Section 4.04 of the Plan, forfeited contributions can be reallocated for one of two purposes: (1) to "reduce Company-Matching Contributions and/or any Profit Sharing Contributions" to the Plan; or (2) to "pay Plan expenses." O'Neil Decl., Ex. A (2015 Plan), § 4.04; Ex. B (2022 Plan), § 4.04.[2]

[2] As Plaintiffs acknowledge, the Verizon Plan was amended as of January 1, 2024 to eliminate the option of using forfeitures to pay Plan expenses. FAC ¶¶ 66–67. Because Plaintiffs do not allege any wrongdoing post-dating December 31, 2023, *id.* ¶ 3, Defendants limit their description of the Plan to the terms in effect before January 1, 2024.

The Verizon Plan specifies the amount of "Company-Matching Contributions" and "Profit Sharing Contributions" that Verizon will contribute to the Plan in a given time period. For "Company-Matching Contributions," the Plan specifies that Verizon will contribute:

> an amount that, when increased by the total amount of forfeitures allocable thereto under Section 4.04 [of the Plan] shall provide an allocation to—
>
> (1) each Management Member equal in value to 100% of the Management Member's Matched Contributions for such payroll period; and
>
> (2) each Non-Management Member equal in value to—
>
> (A) 100% of the Non-Management Member's Matched Contributions for such payroll period, to the extent that such Matched Contributions, in the aggregate, do not exceed 4% of the Member's Compensation for such payroll period, and
>
> (B) 50% of the Non-Management Member's Matched Contributions for such payroll period, to the extent that such Matched Contributions, in the aggregate, exceed 4% of the Member's Compensation for such payroll period.

O'Neil Decl., Ex. A (2015 Plan), § 3.03(a); Ex. B (2022 Plan), § 3.03(a). For "Profit Sharing Contributions," the Plan specifies that "[t]he Company . . . may make a discretionary, performance-based Profit Sharing Contribution to the [Plan] . . . out of [its] accumulated earnings and profits." O'Neil Decl., Ex. A (2015 Plan), § 3.12(a); Ex. B (2022 Plan), § 3.12(a). When the Company decides to make a Profit Sharing Contribution, "[t]he amount of such contribution . . . shall be determined in the sole discretion of the most senior Human Resources officer of the Company" and "shall . . . be reduced by the amount of forfeitures allocable thereto pursuant to Section 4.04 [of the Plan]." O'Neil Decl., Ex. A (2015 Plan), § 3.12(a); Ex. B (2022 Plan), § 3.12(a).

As is clear from the terms of the Plan document, the amount of Verizon's Company-Matching Contributions and Profit Sharing Contributions accounts for the existence of

forfeitures in the Plan's trust fund. O'Neil Decl., Ex. A (2015 Plan) §§ 3.03(a), 3.12(a); O'Neil Decl., Ex. B (2022 Plan) §§ 3.03(a), 3.12(a). Through a combination of forfeitures and new money contributed to the Plan each year, participants in the Verizon Plan received all of the benefits they were due during the relevant time period; Plaintiffs do not allege otherwise.

### C. Plaintiffs' Claims

Plaintiffs purport to be participants in the Verizon Plan during the putative class period. FAC ¶¶ 7–8. In their FAC, Plaintiffs challenge the Plan fiduciaries' allocation of forfeited Company contributions in the Plan's trust fund to pay benefits promised to participants under the terms of the Plan. Plaintiffs claim that the Plan fiduciaries should *not* have used forfeitures to pay participants' benefits, but should have used such forfeitures instead to pay the Plan's expenses. *See, e.g.*, *id.* ¶¶ 86–91, 105, 111. According to Plaintiffs, the Plan fiduciaries' decision to use forfeitures to pay benefits instead of expenses "caused the Plan to receive fewer contributions" from Verizon, which (if received) "would . . . have increased Plan[] assets." *Id.* ¶ 190. Plaintiffs also challenge the timing of the Plan fiduciaries' allocation decisions, arguing that the Plan fiduciaries breached their fiduciary duties by failing to allocate all of the forfeitures in the Plan's trust before the end of the Plan year in which those forfeitures occurred. *Id.* ¶¶ 135–46.

Plaintiffs bring five claims related to the allocation of forfeitures: (i) two claims against the Committee for breach of fiduciary duty; (ii) two claims against the Committee for violation of ERISA's prohibited transactions provisions; and (iii) one claim against Verizon and its board of directors (the "Board") for failure to monitor fiduciaries. *Id.* ¶¶ 179–214. All of these claims lack merit and should be dismissed.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must state a claim for relief that is "plausible on its face" based on "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the motion, the court must accept "all factual allegations in the complaint as true," but need not accept "mere conclusions of law or unwarranted deductions of fact." *Bruno v. Metro. Transp. Auth.*, 544 F. Supp. 2d 393, 395 (S.D.N.Y. 2008).

Although a court's analysis on a Rule 12(b)(6) motion is generally limited to the allegations in the complaint, the court may consider documents "incorporated in the complaint by reference" and "matters of which judicial notice may be taken." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 225 n.1 (S.D.N.Y. 2015). Here, the Court may consider the Plan documents, which Plaintiffs "expressly incorporated by reference" into their FAC. *Revitalizing Auto Communities Env't Response Trust v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).

## ARGUMENT

### I. Plaintiffs Fail to State a Claim Against the Committee for Breach of Fiduciary Duty.

#### A. ERISA Does Not Require Forfeitures to Be Used to Pay Administrative Expenses.

Plaintiffs allege that the Committee violated its fiduciary duties by using forfeitures in the Plan's trust fund to pay benefits due under the terms of the Plan instead of using forfeitures to pay the Plan's expenses. According to Plaintiffs, had the Committee used forfeitures to pay expenses instead of benefits, Verizon—as the Plan's settlor—would have been forced to increase its contributions to the Plan, thereby increasing participants' benefits.

Plaintiffs' theory of liability is unavailing—and indeed, numerous courts have rejected it. As these courts have recognized, Plaintiffs' theory is tantamount to requiring an employer to confer benefits on plan participants that appear nowhere in the plan document. The theory also runs afoul of decades' worth of legislative and regulatory guidance, which make clear that forfeitures *can* be used to pay benefits due under the terms of a plan and need not be used to pay expenses. Plaintiffs' claims against the Committee should be dismissed as a matter of law.

**1. ERISA Imposes No Fiduciary Obligation to Maximize Pecuniary Benefits.**

Plaintiffs contend that ERISA's fiduciary duty provisions require Defendants to provide participants with a benefit—*i.e.*, the payment of the Plan's expenses—that does not appear anywhere in the Plan document. This theory of liability is meritless. It is well established that "[n]othing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Spink*, 517 U.S. at 887. Instead, ERISA serves only to "protect contractually defined benefits." *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013). The plan document defines the parties' rights and obligations to one another, and a plan administrator complies with ERISA as long as it "administer[s]" a lawfully designed plan "as written." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008); *see also Curtis v. Aetna Life Ins. Co.*, 2021 WL 1056785, at *8 (D. Conn. Mar. 18, 2021) (ERISA is "built around reliance on the face of written plan documents.").

Here, Plaintiffs do not claim that they or any other Plan participant received less than the full amount of benefits they were promised under the Plan. Nor do they allege that the Committee was prohibited under the terms of the Plan from using forfeitures to pay participants'

benefits. To the contrary, Plaintiffs concede that the terms of the Verizon Plan allow forfeitures to be used to pay benefits, thereby reducing Verizon's contributions going forward. FAC ¶ 60.

Trying to save their claims, Plaintiffs contend that ERISA's fiduciary duty provisions (as opposed to the Plan terms) require the Committee to allocate forfeitures to cover the cost of the Plan's expenses. According to Plaintiffs, such allocations are required because they would purportedly maximize participants' take-home compensation. *See, e.g.*, *id.* ¶¶ 183, 190, 194. ERISA's fiduciary duty provisions, however, do "not create any fiduciary duty requiring employers to make pension plans more valuable to participants." *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011), *abrogated on other grounds as recognized in Hughes v. Northwestern Univ.*, 63 F.4th 615, 624–26 (7th Cir. 2023); *see also Donelson v. Meijer, Inc.*, 2025 WL 3754241, at *2 (W.D. Mich. Dec. 29, 2025) ("[T]he better reading of ERISA is that a fiduciary's duties are only to provide beneficiaries the specific benefits promised in the plan"). For this reason, "it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits" under a pension plan. *Hutchins I*, 737 F. Supp. 3d at 863; *see also Polanco*, 2025 WL 3003060, at *3 ("ERISA does not . . . create an exclusive duty to maximize pecuniary benefits." (cleaned up)).

Because ERISA does not impose an obligation on plan administrators to maximize participants' benefits, the Committee's use of forfeitures to provide the benefits promised under the terms of the Plan—rather than to pay expenses—does not give rise to a cognizable claim under ERISA. Numerous courts have reached the same conclusion, dismissing substantially identical claims involving the use of forfeitures. *See, e.g.*, *Polanco*, 2025 WL 3003060, at *3 (dismissing claims because plaintiffs' theory "interprets the duty of loyalty to create a benefit that the Plan document itself does not guarantee—the use of Forfeitures to pay administrative

expenses”); *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *14 (D. Kan. Aug. 5, 2025) (dismissing claims because “[i]f the Court were to adopt Plaintiffs’ theory, it would effectively create the benefit of paying Plaintiffs’ administrative costs”); *Cain v. Siemens Corp.*, 2025 WL 2172684, at *4 (D.N.J. July 31, 2025) (dismissing claims because they “would use the fiduciary duties of loyalty and prudence to create a new benefit to participants that is not provided in the plan document itself”); *Dimou*, 2024 WL 4508450, at *9 (“ERISA does not require a fiduciary to maximize pecuniary benefits,” and thus ERISA’s “fiduciary duty provisions do not create an unqualified duty to pay administrative expenses.”).[3]

### 2. Plaintiffs’ Theory of Fiduciary Duties Contravenes Decades of Legislative and Administrative History.

Plaintiffs’ theory of liability also fails because it runs afoul of “the settled understanding of Congress and the Treasury Department regarding defined contribution plans.” *Hutchins I*, 737 F. Supp. 3d at 862–63. As numerous courts have explained, “[t]he Treasury Department and Congress have long understood that forfeitures in defined contribution plans could be reallocated to the remaining participants under a nondiscriminatory formula, used to reduce future employer contributions.” *Id.* at 863. Indeed, the legislative and administrative records are rife with examples of Congress and the Treasury Department endorsing the use of forfeitures to reduce contributions:

[3] Plaintiffs’ position proves too much. Plaintiffs contend that it is always impermissible for a fiduciary to use forfeitures to reduce employer contributions, except in one specific circumstance: “where there is a risk that [an employer] may be financially unable to satisfy its contribution obligations.” FAC ¶ 87. But this purported exception to Plaintiffs’ *per se* rule does not meaningfully limit Plaintiffs’ theory. It cannot be the case that the *only* circumstance in which a fiduciary can allocate forfeitures to reduce contributions is when failing to do so would risk imperiling the company. Indeed, Plaintiffs’ theory runs afoul of decades’ worth of regulations and guidance (discussed below), which permit—and in some instances *require*—the use of forfeitures to reduce contributions, regardless of whether the employer is in financial distress. *See infra* at 11–12. For this reason, courts have repeatedly rejected Plaintiffs’ purported limitation. *See, e.g.*, *Hutchins II*, 767 F. Supp. 3d at 926–27.

- In 1963, the Treasury Department promulgated 26 C.F.R. § 1.401-7(a), which provides that "forfeitures arising from severance of employment, death, or for any other reason, *must not* be applied to increase the benefits any employee would otherwise receive under the plan." 26 C.F.R. § 1.401-7(a) (emphasis added.) The regulation specifies that the "amounts so forfeited *must be used* as soon as possible to *reduce the employer's contributions* under the plan." *Id.* (emphasis added).

- In 1971, the Treasury Department issued a revenue ruling explaining that 26 C.F.R. § 1.401-7(a) applies to pension plans and "does not extend to profit-sharing and stock bonus plans." Rev. Rul. 71-313, 1971-2 C.B. 203, 1971 WL 26693, at *1 (1971). The Department clarified that, for profit-sharing and stock bonus plans, using forfeitures to offset employers' contributions is not mandatory but permissive: "[P]rofit-sharing and stock bonus plans *may provide* that forfeitures be used *to reduce employer contributions* that otherwise would be required." *Id.* (emphasis added).[4]

- In 1974, Congress enacted ERISA. Pub. L. 93-406, tit. I, § 3, 88 Stat. 829, 829 (1974). Pursuant to the statute, Congress defined a "defined contribution plan" as a pension plan that "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

- In 1986, Congress amended the Internal Revenue Code. In doing so, Congress reiterated that "forfeitures arising in any defined contribution plan . . . can be . . . used to reduce future employer contributions." H.R. Rep. No. 99-841, Vol. II at 442 (1986).

- In 1991, the Treasury Department promulgated 26 C.F.R. § 1.401(m)-1(a)(2)(C), pursuant to which the Department defined employer "matching contributions" to include "[a]ny forfeiture allocated on the basis of employee contributions, matching contributions, or elective deferrals."

- In 2007, the Treasury Department published The Internal Revenue Manual, which again confirmed that forfeitures in a defined contribution plan "must be allocated to the remaining participants or used *to reduce the employer contributions* that are otherwise required under the plan." IRM § 7.12.1.9, *Forfeitures* (02-16-2017), 2007 WL 9649931, at *1 (emphasis added).

- In 2010, the IRS issued informal guidance that forfeitures "may be used to pay for a plan's administrative expenses and/or to reduce employer contributions." IRS Pub. 4278-B, Ret. News for Emp'rs 4 (Spring 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf.

[4] Notably, the requirement that forfeitures must be used for contributions remained in effect for defined contribution plans known as money purchase plans. *See* 88 Fed. Reg. 12,282, 12,283 (Feb. 27, 2023) (the term "pension plan" "includes a defined contribution money purchase pension plan").

- In 2018, the Treasury Department issued final regulations that "permit forfeitures of prior contributions to be used to fund" qualified matching contributions ("QMACs") and qualified non-elective contributions ("QNECs"). 83 Fed. Reg. 34,469, 34,470 (July 20, 2018). This regulation was necessary because prior applicable regulations had precluded using forfeitures to fund QMACs and QNECs. *Id.*

- Finally, in 2023, the Treasury Department proposed a new regulation stating that defined contribution plans must provide that forfeitures "will be used for one or more of the following purposes: (i) To pay plan administrative expenses; (ii) *To reduce employer contributions under the plan*; or (iii) To increase benefits in other participants' accounts in accordance with plan terms." 88 Fed. Reg. 12,282, 12,285 (Feb. 27, 2023) (emphasis added).

Even if these authorities do not foreclose Plaintiffs' claims, they are nonetheless "relevant authorities in evaluating the[ir] plausibility." *Dimou*, 2024 WL 4508450, at *9. It is well established that Congress's "failure to revise or repeal [an] agency's . . . longstanding administrative interpretation" of a statute "is persuasive evidence that the interpretation is the one intended by Congress." *CFTC v. Schor*, 478 U.S. 833, 846 (1986). That Congress has repeatedly amended both ERISA and the Tax Code—yet has never acted to proscribe the use of forfeitures to reduce employer contributions—demonstrates the implausibility of Plaintiffs' theory. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally."). Because Plaintiffs' claims fly in the face of "the long history of using forfeitures to reduce employer contributions," their claims should be dismissed. *Polanco*, 2025 WL 3003060, at *4–6; *Hutchins II*, 767 F. Supp. 3d at 922–23; *Dimou*, 2024 WL 4508450, at *9.[5]

---

[5] *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *3 (S.D. Cal. May 24, 2024), and *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024), are distinguishable. In *Perez-Cruet*, the court denied defendants' motion to dismiss, but its opinion did not address the points that Defendants raise in this motion, and indeed, other courts have referred to *Perez-Cruet*'s analysis as "conclusory" and "unpersuasive." *Polanco*, 2025 WL 3003060, at *7. In *Rodriguez*, the court denied defendants' motion to dismiss based on allegations that using forfeitures to reduce employer contributions violated the terms of the defendant's plan. 744 F. Supp. 3d at

### B. Plaintiffs Allege No Nonconclusory Facts to Support Their Breach of Fiduciary Duty Claims.

Even if Plaintiffs' theory were not facially overbroad, Plaintiffs' breach of fiduciary duty claims should be dismissed because Plaintiffs have not pled any nonconclusory facts in support of them.

#### 1. Plaintiffs Plead No Facts Plausibly Supporting Their Disloyalty Claim.

Plaintiffs' complaint contains only a *single* factual allegation in support of their disloyalty claim. In particular, Plaintiffs claim that the Committee faces a "conflict of interest" in administering the Plan because it purportedly has an interest in allocating forfeitures in a way that reduces Verizon's "obligation" to make "matching contributions" to the Plan. *See, e.g.*, FAC ¶¶ 3, 90. This allegation does not withstand scrutiny.

First, there is no plausible "conflict of interest" in this case. Employers who sponsor ERISA plans can—and do—wear two hats in the ERISA context: a "fiduciary hat," which the employer wears when administering the plan for the benefit of plan participants, and a "settlor" hat, which the employer wears when making settlor decisions, such as establishing, designing, funding, or terminating the plan. *Massaro*, 19 F.4th at 211–12. ERISA's fiduciary duty provisions apply only when the employer is wearing its "fiduciary hat," *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000), and thus actions taken by the employer in a settlor capacity cannot give rise to fiduciary liability, *Spink*, 517 U.S. at 890. Critically, "decisions relating to the timing and amount of contributions" are decisions that a sponsor makes in its settlor, not its fiduciary, capacity. *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 367 (2d Cir. 2014). Because plan funding decisions are settlor in nature, there is no "conflict of interest" when an employer

---

946–47. Here, there are no plausible allegations that the Committee's use of forfeitures violated Plan terms, as described in further detail below.

decides how much to contribute to a plan. The employer can make this decision in its own interest, without regard to the interests of plan participants.

Second, Plaintiffs are wrong that Verizon has an "obligation" to contribute a set amount of money to the Plan regardless of the presence of forfeitures in the Plan's trust fund. As explained above, the Plan provisions governing the amount of Verizon's "Company-Matching Contributions" and "Profit Sharing Contributions" permit the Company to consider the presence of forfeitures in the Plan's trust when making funding decisions. *See, e.g.*, O'Neil Decl., Ex. B (2022 Plan), § 3.03(a) ("[T]he Company . . . shall make a Company-Matching Contribution . . . in an amount that, when increased by the total amount of any forfeitures allocable thereto under Section 4.04, shall provide an allocation [as specified by the Plan]"); *id.* § 3.12(a) ("The Company . . . may make a discretionary, performance-based Profit Sharing Contribution," the "amount" of which "shall . . . be reduced by the amount of forfeitures allocable thereto pursuant to Section 4.04."). Indeed, the Plan defines the terms "Company-Matching Contributions" and "Profit Sharing Contributions" to include "any forfeitures that are allocated to Members' Accounts," negating any suggestion that Verizon's contributions must be exclusive of forfeitures. *Id.* §§ 1.01(o) & (ccc). These definitions are consistent with the regulatory definition of the term, which similarly contemplates that an employer may fund a plan through forfeitures that already exist in the plan's trust fund. *See* C.F.R. § 1.401(m)-1(a)(2)(C) (defining matching contributions to include "[a]ny forfeiture allocated on the basis of employee contributions, matching contributions, or elective deferrals").

Taken together, these provisions make clear that Verizon may take into account—and reduce the total amount of contributions it would otherwise make to the Plan based on—the existence of forfeitures. Verizon has never committed itself to contribute a set amount of *new*

money to the Plan, exclusive of forfeitures, as Plaintiffs presume. This is true regardless of the timing of Verizon's contribution decisions. FAC ¶ 51.[6]

Because Verizon does not have an "obligation" to fund the Plan at a level exclusive of forfeitures, the Committee's use of forfeitures to "reduce Verizon's contributions" does not relieve Verizon of any "obligation." Other courts have reached the same conclusion, dismissing substantially similar disloyalty claims. *See, e.g.*, *Hutchins*, 737 F. Supp. at 867 (rejecting argument that employer's future contributions are a "debt" owned to the plan because the argument "is based on a distinction between 'new money' that HP contributes to the Plan . . . and 'old money' that HP has already contributed to the Plan that is without support in the terms of the Plan, the text of ERISA, or case law"). They have done so even where the plan language at issue simply *permitted* forfeitures to be used to reduce employer contributions, unlike the language here which *presumes* that forfeitures will be used to fund employer contributions. *See id.* at 856–57 (discussing plan language stating that forfeitures "may be used to 'reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use'").[7]

---

[6] It bears emphasis that Profit Sharing Contributions are purely "discretionary" under the Plan, and thus Verizon has no obligation to make such contributions—exclusive of forfeitures or otherwise. *See* O'Neil Decl., Ex. A (2015 Plan), § 3.12(a); Ex. B (2022 Plan), § 3.12(a); *see also Polanco*, 2025 WL 3003060, at *4 (dismissing disloyalty claim because, among other reasons, "the Plan document does not require that [defendant] make employer contributions at all").

[7] The decision in *McManus v. Clorox Co.*, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025), is distinguishable. There, the court determined that plaintiff had plausibly alleged a conflict of interest based on defendants' purported incentives to reduce "Clorox's non-elective contributions to the Plan." *Id.* at *3–4. The Clorox Plan, however, did not define contributions to include forfeitures, suggesting that Clorox might be required to contribute a set amount of new money to the plan each year. *Id.* Here, by contrast, the Plan makes clear that "Company-Matching Contributions" and "Profit Sharing Contributions" include "forfeitures," refuting any suggestion that Verizon was required to contribute a defined amount of new money to the Plan each year. O'Neil Decl., Ex. A (2015 Plan), § 3.03(a); Ex. B (2022 Plan), § 3.03(a).

**2. Plaintiffs Plead No Facts in Support of Their Imprudence Claim.**

Plaintiffs also assert that the Committee violated its duty of prudence by "fail[ing] to conduct any investigation" into whether using the forfeited funds in the Plan to reduce Verizon's contributions was "in the best interest of the participants." FAC ¶ 110. But as explained above, the Plan contemplates that Verizon takes into account the availability of forfeitures in the Plan when setting its contribution levels in its role as employer, so no such investigation is required. Moreover, this allegation merely restates the elements of an imprudence claim. Indeed, the only fact that Plaintiffs plead in support of their claim is that the Committee purportedly failed to allocate forfeitures to cover expenses. *Id.* ¶ 114. From this fact, Plaintiffs ask the Court to infer that the Committee must have "employed a flawed decision-making process . . . to determine how to allocate Plan forfeitures," *id.*, but such allegation is plainly insufficient to state a cause of action, *see, e.g.*, *Polanco*, 2025 WL 3003060, at *8 ("[P]lausibly alleging a failure to fulfill the duty of prudence . . . requires more than simply speculating that an ERISA fiduciary might not have conducted the requisite inquiry." (cleaned up)); *Sievert*, 780 F. Supp. 3d at 879 ("[A] plan sponsor's decision to allocate forfeitures toward reducing its own employer contributions, without more, is not sufficient to state a claim for a breach of [the] fiduciary duty of . . . prudence."); *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518, at *5 (D. Ariz. Sept. 15, 2025) (dismissing imprudence claim because plaintiff "does not provide any specific facts about WillScot's alleged flawed processes when making decisions to reallocate forfeitures").

Indeed, it is unclear what an "investigation" into Verizon's ability or willingness to increase its contributions to the Plan would even accomplish. As explained above, "decisions relating to the timing and amount of contributions" are settlor, not fiduciary, decisions. *Coulter*, 753 F.3d at 367. Because settlor decisions do not implicate fiduciary duties, Verizon is entitled

to make decisions about Plan funding in its own interest, without regard to the interests of Plan participants. Accordingly, even if the Committee conducted an investigation and determined that Verizon possessed adequate funds to increase its contributions to the Plan, Verizon—acting in its settlor capacity—would have no obligation to actually contribute such funds. Because "Plaintiff[s] fail[] to plausibly allege that a 'proper' investigation would have led to a different outcome," their claims should be dismissed. *Hutchins II*, 767 F. Supp. 3d at 927; *see also Estay v. Ochsner Clinic Found.*, 2025 WL 2644782, at *5 (E.D. La. Sept. 15, 2025) ("[W]here the plaintiff received all of the benefits promised under the plan, he cannot allege that a more thorough investigation would have led to a different outcome.").[8]

### 3. The Committee's Purported Failure to Allocate Forfeitures by Year-End Does Not Support a Claim.

Finally, Plaintiffs contend that, regardless of the *substance* of the Committee's allocation decisions, the Committee violated the Plan and its fiduciary duties based on the *timing* of those decisions. Specifically, Plaintiffs contend that the Committee violated Plan terms and its fiduciary duties by failing to "allocat[e] all of the Plan's forfeitures by the end of each Plan year" in which such forfeitures occurred. FAC ¶ 191. This argument is baseless.

There is no merit to Plaintiffs' contention that the Committee violated the terms of the Plan by failing to allocate forfeitures "by the end of [the] Plan year" in which such forfeitures occurred. *Id.* As Plaintiffs acknowledge, the Verizon Plan specifies that "[a]ny amounts

[8] Plaintiffs contend that "there are no facts or circumstances to suggest that Verizon's process in determining the amount of its Plan contributions is based on any consideration of the amount of Plan forfeitures." FAC ¶ 116. But the terms of the Plan define "Company-Matching Contributions" and "Profit Sharing Contributions" to include forfeitures, and indeed, the Plan expressly contemplates that Verizon would consider forfeitures when making contribution decisions. *See supra* at 4–6. There is thus every reason to believe that "Verizon's process in determining the amount of its Plan contributions is based on a[] consideration of the amount of Plan forfeitures." FAC ¶ 116.

forfeited" by Plan participants "shall be applied to reduce Company-Matching Contributions and/or any Profit Sharing Contributions to the Plan for the current Plan Year *or the Plan Year next following the Plan Year in which the forfeiture[s] occurred* or shall be used to pay Plan expenses." O'Neil Decl., Ex. A (2015 Plan), § 4.04; Ex. B (2022 Plan), § 4.04 (emphasis added). Although Plaintiffs allege that the Committee failed to allocate forfeitures in the "Plan Year" in which they occurred, there is no allegation that the Committee failed to allocate forfeitures in "the Plan Year next following the Plan Year in which the[y] occurred." Absent such allegation, there is no plausible basis for Plaintiffs to contend that the Committee violated the terms of the Plan based on the timing of its allocation decisions. *See also Donelson*, 2025 WL 3754241, at *5 ("Plaintiffs provide no reason to think that the mere existence of a forfeiture balance at year's end necessarily implies an unreasonable delay.").

Plaintiffs' argument that the Committee violated ERISA based on the timing of its allocation decisions is equally meritless. Plaintiffs' argument is based on IRS Revenue Ruling 80-155, which Plaintiffs contend "requir[es] all monies in a defined contribution plan to be allocated annually to plan participants," FAC ¶ 107, and IRS Publication 4278-B, which states that the "[Internal Revenue] Code does not authorize forfeiture suspense accounts to hold unallocated monies beyond the plan year in which they arise," IRS Pub. 4278-B, Ret. News for Empr's 4 (Spring 2010), *available at* https://www.irs.gov/pub/irs-pdf/p4278.pdf. Both of these provisions, however, are tax-qualification standards. They determine whether a plan receives certain tax benefits, but they do not set forth rules applicable under ERISA. *See Perlman v. Fidelity Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 413–14 (E.D.N.Y. 2013). Nor do tax-qualification standards provide participants with a private cause of action. *Id.*; *see also Seabury*

*v. City of New York*, 2006 WL 1367396, at *5 n.6 (E.D.N.Y. May 18, 2006) (there is "no private right of action for an alleged violation of" the Tax Code).

More importantly, the tax qualification standards that Plaintiffs cite are outdated. In 2023, the Treasury Department proposed a new regulation that (i) supersedes IRS Publication 4278-B, and (ii) clarifies plan administrators' obligations under IRS Revenue Ruling 80-155. In its new regulation, the Treasury Department specifies that forfeitures in a plan need *not* be used in the plan year in which they are incurred, but may be used "no later than 12 months *after* the close of [such] plan year." 88 Fed. Reg. 12,282, 12,284 (Feb. 27, 2023) (emphasis added). The Department's regulation further specifies that plan administrators are permitted to rely on the regulation, even for plan years that pre-date the regulation's effective date. *Id.* In other words, plan administrators are allowed to maintain forfeitures in an unallocated account at the end of a plan year to be carried over for use in the following year, which is precisely what the Committee has allegedly done. FAC ¶ 193.

Finally, there is no merit to Plaintiffs' contention that the Committee's failure to allocate forfeitures by the end of a Plan year is imprudent because participants were "denied additional benefits and/or reduced Plan expenses." *Id.* ¶ 194. It is undisputed that Verizon Plan participants received all of the benefits they were due under the terms of the Plan. Plaintiffs' contention that participants should have received "additional benefits" that were *not* promised under the Plan—*i.e.*, forfeitures remaining in the Plan at the end of a Plan year—is contrary to well-established precedent. *See supra* at 8–10. Instead, the law is clear that when assessing whether a fiduciary has complied with the duty of prudence, "the dispositive inquiry is whether the promised benefits were provided and the terms of the Plan document were complied with." *Garner v. Northrop Grumman Corp.*, 2025 WL 3488657, at *4 n.8 (E.D. Va. Dec. 4, 2025). The

Committee has plainly satisfied this standard. *See Polanco*, 2025 WL 3003060, at *9 (dismissing imprudence claim based on purported failure "to allocate excess Forfeitures at the end of each Plan year").

### C. Plaintiffs' Theory Does Not Implicate the Committee's Fiduciary Duties.

Separate and apart from the arguments above, Plaintiffs' breach of fiduciary duty claims fail for the independent reason that Plaintiffs' claims do not implicate the Committee's fiduciary duties. As the FAC makes clear, the crux of Plaintiffs' claims is that the Committee breached its fiduciary duties by using forfeitures to "reduc[e] [Verizon's] contributions to the Plan." FAC ¶ 65. Decisions about a company's "contributions," however, are settlor decisions that do not implicate fiduciary duties. Because Plaintiffs do not challenge a fiduciary decision in their FAC, their breach of fiduciary duty claims should be dismissed.

#### 1. Funding a Plan Is a Settlor, Not a Fiduciary, Function.

As noted above, it is well established that employers who sponsor ERISA plans exercise both fiduciary and nonfiduciary duties and that ERISA's fiduciary duty provisions apply only when the employer is wearing its "fiduciary hat." *See Pegram*, 530 U.S. at 225. For this reason, the "threshold question" in any ERISA case asserting a breach of fiduciary duty claim is "not whether the actions of some person . . . adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226.

It is black-letter law that "decisions relating to the timing and amount of contributions" to a plan are settlor, not fiduciary, responsibilities. *Coulter*, 753 F.3d at 367. It therefore follows that decisions about whether to fund a plan—and by what amount—do not give rise to fiduciary liability. *See, e.g.*, *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Lcl. 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (holding that corporate officer

"who chooses to pay corporate obligations in lieu of employer contributions to an ERISA plan does not breach a fiduciary duty"); *Petroff v. Ret. Benefit Plan of Am. Airlines, Inc.*, 2015 WL 13917970, at *14 (C.D. Cal. July 28, 2015) ("Funding a plan is a settlor function."). Because Plaintiffs challenge a decision to "reduc[e] [Verizon's] contributions to the Plan"—not a decision that implicates the Committee's fiduciary duties—their breach of fiduciary duty claims should be dismissed. FAC ¶ 65.

**2. Plaintiffs' Invocation of the Committee's "Allocation" Decisions Cannot Save Their Claims.**

Recognizing that plan funding decisions do not give rise to fiduciary liability, Plaintiffs attempt to recast Verizon's funding decisions as fiduciary in nature by suggesting that the Committee's allocations of forfeitures somehow *induced* Verizon to reduce its contributions to the Plan. FAC ¶ 190. This argument gets things backwards. A fiduciary does not control a company's decision to contribute assets to a plan; instead, the company makes plan funding decisions solely in its settlor capacity. *Pegram*, 530 U.S. at 225 ("ERISA . . . require[s] . . . that the fiduciary with two hats wear only one at a time."); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *11 (S.D.N.Y. Aug. 31, 2009) (refusing to impose duty on ERISA fiduciary that would intrude on sponsor's duty as settlor). Because Verizon decided in its settlor capacity to set its funding level while taking into account forfeitures present in the Plan's trust fund, the Plan's fiduciaries had no discretion to use the forfeitures for any other purpose.

Plaintiffs claim that the Committee, acting as a fiduciary, determines whether forfeitures should be used to pay the Plan's expenses, but the Plan document specifies the opposite. In particular, the Plan specifies that the "Company"—acting in its settlor capacity—decides whether the "expenses of administering the Plan" will be "paid by the Company" or whether such expenses will "be paid from the Trust." O'Neil Decl., Ex. A (2015 Plan), § 10.11(d); Ex. B

(2022 Plan), § 10.11(d). Other courts have interpreted similar provisions to affirm that decisions about the use of forfeitures to pay plan expenses are settlor, not fiduciary, decisions. In *Hutchins II*, for example, the court interpreted substantially similar plan language to mean that an employer "acting as settlor determines whether, in a given year, Plan expenses will be paid by [the employer] or charged to Plan participants' accounts." 767 F. Supp. 3d at 922 (emphasis omitted). While the plan's fiduciary might work to implement this decision, "[the employer] (as fiduciary) will only use . . . forfeitures to pay Plan expenses if [the employer] (as settlor) decided that year that the Plan administrator should use at least some forfeitures to pay Plan expenses." *Id.* The same holds true in this case.

**D. Plaintiffs Do Not Allege a Plan Injury.**

Finally, Plaintiffs' breach of fiduciary duty claims under Section 502(a)(2) fail because Plaintiffs have not alleged a plausible injury to the Plan.

To state a claim for breach of fiduciary duty under Section 502(a)(2), a plaintiff must allege an injury to the plan. It is not enough that a plaintiff alleges some sort of individual injury, separate and distinct from a plan injury. *See, e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries."); *Cedeno v. Sasson*, 100 F.4th 386, 399 (2d Cir. 2024) ("[A] plaintiff suing for breach of fiduciary duty under [Section] 502(a)(2) . . . *may seek recovery only for injury done to the wronged plan*." (alterations and emphasis in original)).

Here, Plaintiffs fail to allege any cognizable injury to the Verizon Plan. In their FAC, Plaintiffs claim that the Committee should have allocated forfeitures in the Plan differently by using forfeitures to pay the Plan's expenses instead of participants' benefits. Allegations that a plan should have "allocated benefits differently," however, do not establish "that the plan itself

has suffered any injury." *Diaz v. Westco Chems., Inc.*, 2023 WL 3615663, at *1 (9th Cir. May 24, 2023). This principle disposes of Plaintiffs' causes of action.

In the alternative, Plaintiffs allege that the Committee's actions harmed the Plan by inducing the Company to make "fewer contributions that would otherwise have increased [the] Plan's assets." FAC ¶ 190. Plan funding decisions, however, are settlor in nature and do not give rise to fiduciary liability. *See supra* at 13–14. Even if they did, Plaintiffs have not plausibly alleged that the Committee's actions *caused* Verizon to reduce its contributions. Instead, Plaintiffs speculate that had the Committee made a different decision about how to allocate forfeited benefits within the Plan, the Company might have made a different decision about how much money it would contribute to the Plan. Plaintiffs, however, have failed to plead any facts linking the two decisions. Theories of liability that rely on mere speculation as to what a plan sponsor, in its role as a settlor, might do in response to a particular course of action are insufficient to state a cause of action. *See, e.g.*, *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 457 (3d Cir. 2003) (holding that "notion that the firm would have passed [certain] savings on to its employees in the form of a higher salary or additional benefits[]" was "far too speculative to serve as [a] basis for a claim of individual loss"); *see also Liberian Community Ass'n of Conn. v. Lamont*, 970 F.3d 174, 185 (2d Cir. 2020) (noting courts' "usual reluctance to endorse" injury theories "that rest on speculation about the decisions of independent actors").

## II. Plaintiffs Fail to State a Claim Against the Committee for Violation of ERISA's Prohibited Transactions Provisions.

In addition to their fiduciary duty claims, Plaintiffs bring a claim against the Committee under ERISA § 406(a)(1), which prohibits an ERISA fiduciary from "caus[ing] the plan to engage in a transaction" that "he knows or should know . . . constitutes a . . . (A) sale or exchange, or leasing, of any property between the plan and a party in interest" or "(D) transfer to,

or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1). Plaintiffs also bring a claim against the Committee under ERISA § 406(b)(1), which prohibits an ERISA fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1). Both claims fail for multiple reasons.

First, to state a claim under § 406, a plaintiff must allege that a defendant was acting in a fiduciary capacity with respect to the contested transaction. *Spink*, 517 U.S. at 889–90. Here, because Plaintiffs' allegations about Verizon's decision to set its funding level while taking into account forfeitures implicate settlor, not fiduciary, responsibilities, Plaintiffs' claims under § 406 fail to state a viable claim. *See Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 90–91 (2d Cir. 2017) (employer's "use of cost-reduction strategies to minimize its cost of providing" benefits "does not constitute a transfer for its own benefit or self-dealing in its own interest" in violation of § 406).

Second, to the extent Plaintiffs complain about the Committee's allocation of forfeitures within the Plan, Plaintiffs' claims are unavailing. As controlling law makes clear, § 406 is concerned only with "commercial bargains"—that is, bargains that "present a special risk of plan underfunding because they are struck with plan insiders." *Spink*, 517 U.S. at 893. Allocations of assets within a plan are not commercial transactions, and thus do not implicate § 406. For this reason, courts routinely dismiss prohibited transactions claims based on the allocation, or reallocation, of plan assets, including forfeitures. *See, e.g.*, *Polanco*, 2025 WL 3003060, at *10 (dismissing §§ 406(a)(1) and (b)(1) claims because "the intra-plan reallocation of forfeitures to cover employer contributions . . . is not a transaction within the meaning of § 1106"); *Dimou*, 2024 WL 4508450, at *11 (dismissing § 406(b)(1) claim because "[a]n intra-plan transaction, like forfeiture reallocation, is unlike a sale or leasing of property to a third-party"); *Madrigal v.*

*Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *7 (C.D. Cal. May 2, 2025) (dismissing §§ 406(a)(1) and (b)(1) claims because "Plaintiff fails to identify a transaction that falls under the scope of the prohibited transactions rule").

Third, Plaintiffs' prohibited transactions claims fail because they effectively challenge the Committee's use of forfeitures to pay benefits due under the terms of the Plan. It is well established that "the payment of benefits is . . . not a 'transaction' in the sense that Congress used that term" in § 406. *Spink*, 517 U.S. at 892–93. Accordingly, courts routinely dismiss prohibited transactions claims challenging the payment of benefits, including through the use of forfeitures. *See, e.g.*, *Polanco*, 2025 WL 3003060, at *10 ("Because the intra-plan reallocation of forfeitures to cover employer contributions is a 'payment of benefits,' it is not a transaction within the meaning of § 1106." (cleaned up)); *Hutchins II*, 767 F. Supp. 3d at 928 (dismissing § 406(b)(1) claim because "using plan assets to pay plan benefits is not a 'transaction' under the prohibited transactions provisions of ERISA"); *Sievert*, 780 F. Supp. 3d at 880 (dismissing § 406(a)(1) claim because "the reallocation of Plan assets to provide benefits to employees as matching contributions is not a prohibited transaction"); *see also Donelson*, 2025 WL 3754241, at *5 (finding that allocation of forfeitures within plan is not a prohibited transaction because the employer could amend the plan to require such an allocation).

Finally, Plaintiffs' claims under Section 406 are simply "too broad to be plausible." *Dimou,* 2024 WL 4508450, at *9. If the allocation of forfeitures to cover employer contributions is a prohibited transaction under ERISA, then such allocations would always violate § 406, even though Treasury regulations specify that such allocations are permissible and, in some instances, required. *See supra* at 11–12. Plaintiffs cannot square their position with the "settled understanding of Congress and the Treasury Department" regarding defined contribution plans.

*Dimou*, 2024 WL 4508450, at *9; *see also Estay*, 2025 WL 2644782, at *6 (refusing to construe § 406 as prohibiting allocation of forfeitures to offset contributions because construing that "option as a 'prohibited transaction' would be to read that choice out of the Plan entirely and conclude that § 1106(b) confers a benefit, a result which cannot be tolerated").

## III. Plaintiffs Have Failed to State a Claim Against Verizon and the Board for Failure to Monitor Fiduciaries.

Finally, Plaintiffs' failure to monitor claim against Verizon and the Board should be dismissed because it fails to state a cause of action.

As the Second Circuit has explained, a claim for failure to monitor fiduciaries is derivative of the underlying breach of fiduciary duty claim and therefore fails when the underlying breach claim is subject to dismissal. *See Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016). Because Plaintiffs' breach of fiduciary duty claims fail for the reasons discussed above, Plaintiffs' failure to monitor claim should be dismissed as well.

Alternatively, Plaintiffs' failure to monitor claim should be dismissed because Plaintiffs have not pled any facts supporting their claim. Instead, Plaintiffs assume that any monitoring by Verizon and the Board must have been deficient because an alleged breach of fiduciary duty occurred, but such conclusory statements are insufficient to state a claim. *Nicolas v. The Trustees of Princeton Univ.*, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (dismissing monitoring claims where allegations "read[] like legal conclusions as opposed to factual allegations" and plaintiff did "not allege facts about Defendant's actual monitoring process and its specific shortcomings").[9]

[9] Because Plaintiffs' failure to monitor claim is the only claim asserted against Verizon and the Board, the dismissal of this claim requires the dismissal of the action against those defendants, regardless of whether the Court dismisses Plaintiffs' other claims.

## CONCLUSION

For these reasons, Plaintiffs' claims should be dismissed.

Dated: January 9, 2026

Respectfully submitted,

*/s/ William E. O'Neil*

William E. O'Neil
Celin Carlo-Gonzalez
COVINGTON & BURLING LLP
30 Hudson Yards
New York, New York 10001-2170
Tel: (212) 841-1000
woneil@cov.com
ccarlogonzalez@cov.com

Robert Newman* (*Pro Hac Vice*)
Christian J. Pistilli* (*Pro Hac Vice*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
cpistilli@cov.com
rnewman@cov.com

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law contains 8,749 words and that it complies with the length restrictions in Local Civil Rule 7.1(c).

*/s/ William E. O'Neil*
William E. O'Neil