**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID BILODEAU and ELIZABETH DUDLEY, Individually and as representatives of a Class of Participants and Beneficiaries of the Verizon Savings Plan for Management Employees,

Plaintiffs,

v.

VERIZON COMMUNICATIONS, INC.; BOARD OF DIRECTORS OF VERIZON COMMUNICATIONS, VERIZON EMPLOYEE BENEFITS COMMITTEE,

Defendants.

Case No: 1:25-cv-07057-AS

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## INTRODUCTION

This case concerns fiduciaries' discretionary use of forfeited Plan assets in a manner that favored Verizon while Plan participants continued to bear millions of dollars in administrative expenses that the Plan expressly authorizes forfeitures to defray. Plaintiffs do not challenge the permissibility of using forfeitures to offset employer contributions in the abstract, nor do they seek to impose an unqualified duty to "maximize" benefits. First Amended Complaint, Dkt. 38 ("FAC"), ¶ 145. They allege that where Plan terms confer discretion over forfeited plan assets, ERISA requires that discretion to be exercised loyally, prudently, and in the interest of participants—not reflexively in the sponsor's financial interest. *See id; accord Heet et al v. National Medical Care Inc. et al.,* Case No. 1:25-CV-11644, Dkt. 38, at 16-19 (Order Denying In Part MTD) (D. Mass. Feb. 9, 2026).

From 2019 through 2023, the Verizon Employee Benefits Committee repeatedly applied forfeitures to reduce Verizon's contribution obligations, even though the Plan permits forfeitures to be used instead to pay Plan expenses and even though participants' accounts were charged those expenses during the same period. FAC ¶¶ 56–61, 84–91. As a result, participants bore more than $49 million in avoidable administrative expenses and lost the investment earnings and compounding those assets would have generated had forfeitures been used for expense relief. FAC ¶¶ 3, 87–88, 129.

Verizon's motion opens by attacking a theory Plaintiffs do not advance. Plaintiffs do not contend that ERISA prohibits forfeiture offsets or that fiduciaries must force Verizon to contribute more money to the Plan. They allege that fiduciaries exercised discretionary control over existing plan assets—forfeitures—in a manner that relieved Verizon of financial obligations while participants paid expenses the Plan contemplates forfeitures would cover. That is a claim about fiduciary administration and asset management, not plan design or funding levels.

Verizon's contention that no fiduciary discretion existed because the Company set contribution levels "taking into account forfeitures" is contradicted by the Plan itself. The Plan establishes a disjunctive choice: forfeitures may be used either to reduce Company contributions or to pay Plan expenses, and when expenses are paid from the trust, they are to be paid from forfeitures. FAC ¶¶ 56–58. The FAC plausibly alleges that the Committee exercised that choice repeatedly and exclusively in Verizon's favor, triggering ERISA's duties of loyalty and prudence. FAC ¶¶ 65, 184.

This case is therefore unlike *Polanco v. WPP Group USA, Inc.,* 24-cv-9548 (JGK), 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025). Unlike *Polanco*, Plaintiffs allege Plan provisions tying

forfeitures to expense payments, concrete expense debits to participant accounts, and facts supporting a reasonable inference of sponsor-favoring fiduciary discretion. FAC ¶¶ 56-58, 65, 129. Plaintiffs do not seek to rewrite the Plan or redistribute benefits. They seek redress for the misuse of plan assets and the resulting depletion of participant accounts—precisely the type of fiduciary harm ERISA §§ 404, 409, and 502(a)(2) are designed to remedy.

For those reasons, Defendants' motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

### A. The Verizon Savings Plan and Its Administration

The Verizon Savings Plan for Management Employees (the "Plan") is a defined contribution retirement plan governed by ERISA. FAC ¶¶ 43, 48. Plan assets are held in a dedicated trust and allocated to individual participant accounts. FAC ¶¶ 45–46. A participant's benefit consists of the balance of his or her account, including contributions, earnings, losses, expenses, and any forfeitures allocated to that account. FAC ¶ 49; 29 U.S.C. § 1002(34).

Verizon Communications Inc. ("Verizon") is the Plan sponsor. In that role, Verizon performs settlor functions, including deciding whether and how much to contribute to the Plan. FAC ¶ 47. The Verizon Employee Benefits Committee (the "Committee") serves as the Plan Administrator and is responsible for the Plan's day-to-day administration and operation. FAC ¶¶ 15, 37–38. The Committee is a fiduciary "to the extent" it exercises discretionary authority or control over plan management or the disposition of plan assets. FAC ¶¶ 37–38.

Like all large defined contribution plans, the Plan incurs administrative expenses, including recordkeeping, trustee, legal, accounting, and other fees. FAC ¶ 3. Under the Plan, Verizon may elect to pay those expenses directly, or expenses may be paid from the Plan's trust and charged to participant accounts. FAC ¶ 56; Plan § 10.11(d). Between 2019 and 2023, at least some portion of

the Plan's administrative expenses was paid from the trust and charged to participants' accounts. FAC ¶¶ 75–76, 78–80.

### B. Forfeitures Under the Plan and the Discretionary Allocation Framework

Participants are immediately vested in their own contributions and become fully vested in Verizon's contributions after three years of service. FAC ¶¶ 50, 53. If a participant terminates employment before becoming fully vested, the non-vested portion of Verizon's contributions allocated to that participant's account is forfeited. FAC ¶ 55. Forfeiture occurs "as soon as administratively practicable" following termination. *Id.*

Once forfeited, these amounts remain in the Plan's trust as plan assets and may be reallocated. FAC ¶¶ 54–55. Section 4.04 of the Plan governs the use of forfeitures. It provides that forfeitures "shall be applied" either (1) to reduce Company-Matching Contributions and/or Profit Sharing Contributions "for the current Plan Year or the Plan Year next following," ***or*** (2) "to pay Plan expenses in accordance with Section 10.11(d)." FAC ¶¶ 56–57; Plan § 4.04 (emphasis added).

Section 10.11(d) addresses how expenses are paid when they are paid from the trust. It provides that "[e]xpenses paid from the Trust shall be paid from forfeitures allocable under Section 4.04," and only to the extent forfeitures are insufficient are expenses allocated pro rata from the trust. FAC ¶ 58; Plan § 10.11(d). Read together, these provisions establish that when the Committee decides how forfeitures will be used—either to reduce Verizon's contribution costs or to defray Plan expenses—it exercises discretionary control over plan assets. FAC ¶¶ 56–61.

The Plan separately specifies the formulas for Company-Matching Contributions and discretionary Profit Sharing Contributions. FAC ¶¶ 51–52. Those provisions recognize that forfeitures may be taken into account in determining the amount of employer contributions ultimately

required. But they do not eliminate the Committee's discretion, conferred elsewhere in the Plan, over how forfeitures are allocated once they arise as plan assets. FAC ¶¶ 56–61.

### C. The Committee's Use of Forfeitures and Resulting Harm

The FAC relies on the Plan's Form 5500 filings and audited financial statements from 2019 through 2023. Those disclosures describe forfeitures as being used to reduce future employer contributions and, in some years, to pay administrative expenses—but they do not disclose how much was allocated to each purpose. FAC ¶¶ 76–82. Based on those disclosures, Plaintiffs allege it is reasonable to infer that the Committee used all or nearly all forfeitures to offset Verizon's contribution obligations during the relevant period, particularly because the Plan's 2019 and 2020 audited financials did not report forfeitures being used to pay administrative expenses at all. FAC ¶¶ 82–84. Plaintiffs further allege that forfeitures remained unallocated at year-end in multiple years, including approximately $1.1 million at December 31, 2023 and $1.2 million at December 31, 2022. FAC ¶ 80.

At the same time, participants' accounts were charged administrative expenses. FAC ¶¶ 75–76, 78–80, 129. Plaintiffs allege that from 2019 through 2023, participants bore more than $49 million in avoidable administrative expenses that forfeitures could have defrayed under the Plan's terms, resulting in lost investment earnings and compounding. FAC ¶¶ 3, 60–61, 87–88, 129. Plaintiffs further allege that allocating forfeitures to reduce employer contributions predictably benefits Verizon by lowering its contribution costs. FAC ¶ 86. Such an allocation could align with participants' interests if Verizon faced financial distress or an inability to fund promised contributions. FAC ¶ 87. But Plaintiffs allege no such circumstances existed: Verizon reported tens of billions of dollars in annual profits throughout the relevant period. FAC ¶¶ 86–89. In that context,

Plaintiffs allege a prudent and loyal fiduciary would have considered using forfeitures to defray Plan expenses rather than consistently prioritizing employer offsets. FAC ¶¶ 88–91.

Effective January 1, 2024, Verizon amended the Plan to eliminate the expense-use option and require forfeitures to be used to reduce employer contributions going forward. FAC ¶¶ 94–102. Plaintiffs allege that amendment underscores that no such mandatory priority existed during the class period and that, before 2024, the Committee exercised discretion under the Plan's pre-amendment terms. *See id.* Plaintiffs also allege that "[t]he Plan Committee was required to monitor Plan forfeitures and should have ensured that all Plan forfeitures for the plan year were promptly exhausted by year end or shortly thereafter, and did not remain in an unallocated Plan account." FAC ¶ 135. Instead, by allowing the unallocated Plan forfeitures in each year of the Class Period to remain unused without prudently considering exhausting those funds, FAC ¶¶ 136, 142-143, Verizon caused Plaintiffs and the Class to lose $7.5 million in losses from 2019-2023 by imprudently failing to exhaust Plan forfeiture suspense accounts in a timely manner at the end of each year. FAC ¶ 144.

### D. Plaintiffs' Claims

Plaintiffs are Plan participants during the relevant period. FAC ¶¶ 7–8. They challenge fiduciaries' discretionary allocation of forfeited plan assets under the Plan's pre-2024 terms. Plaintiffs do not contend that ERISA categorically prohibits the use of forfeitures to offset employer contributions. Rather, they allege that where the Plan confers discretion over forfeitures, fiduciaries breached their duties of loyalty and prudence by exercising that discretion in a sponsor-favoring manner while participants bore avoidable expenses. FAC ¶¶ 56–61, 84–91.

Plaintiffs also allege that fiduciaries engaged in prohibited transactions by using plan assets for Verizon's benefit and by dealing with plan assets in their own interest. FAC ¶¶ 186–205. Finally, Plaintiffs allege that Verizon and its Board failed to monitor fiduciaries responsible for forfeiture allocation decisions. FAC ¶¶ 206–214.

**MOTION TO DISMISS STANDARD**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," and must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, the Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in plaintiffs' favor; it need not accept legal conclusions or "unwarranted deductions of fact." *Iqbal*, 556 U.S. at 678; *Bruno v. Metro. Transp. Auth.*, 544 F. Supp. 2d 393, 395 (S.D.N.Y. 2008).

Critically, Rule 12(b)(6) is not a vehicle for resolving competing factual explanations. Where the pleaded facts support a reasonable inference of liability, defendants' alternative narrative is a merits argument for later stages. *See Iqbal*, 556 U.S. at 678 (plausibility asks for a reasonable inference, not proof). And ERISA cases are not subject to any heightened pleading rule: the Supreme Court has emphasized that ERISA claims are evaluated under ordinary *Twombly/Iqbal* pleading principles, and that fiduciary prudence is "context specific" because it depends on "the circumstances … prevailing" when the fiduciary acts. *See Hughes v. Nw. Univ.*, 595 U.S. 170, 176–77 (2022) ("*Hughes I*") (reversing Rule 12 dismissal; context-specific inquiry); *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (same); *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (ERISA duties derive from trust law).

The Court's review is generally limited to the complaint. But it may consider documents incorporated by reference, documents integral to the complaint, and matters subject to judicial notice. *See Tannerite Sports, LLC v. NBCUniversal Media LLC,* 135 F. Supp. 3d 219, 225 n.1

(S.D.N.Y. 2015). Here, Plaintiffs' allegations expressly rely on—and quote—Plan provisions governing forfeitures and expenses, as well as public Form 5500 filings and audited financial statements. FAC ¶¶ 56–58, 80–85.

## ARGUMENT

Verizon mischaracterizes Plaintiffs' theory**.** Plaintiffs do not allege that forfeitures may never be used to pay benefits or that fiduciaries were required to force Verizon to contribute additional funds to the Plan. Nor do Plaintiffs seek to impose benefits "nowhere in the plan document." Rather, Plaintiffs allege that where the Plan expressly confers discretion over forfeited plan assets—permitting those assets to be used either to offset employer contributions or to pay Plan expenses—ERISA requires fiduciaries to exercise that discretion loyally and prudently. FAC ¶¶ 56–61, 84–91.

The FAC does not challenge the permissibility of using forfeitures to reduce employer contributions in the abstract. It challenges the fiduciaries' discretionary choice to apply forfeitures exclusively in a manner that relieved Verizon of contribution costs while participants simultaneously bore millions of dollars in administrative expenses that the Plan expressly authorizes forfeitures to defray. FAC ¶¶ 3, 56–58, 75–80, 87–88, 129. That allegation concerns fiduciary administration and asset management, not plan design or funding obligations.

Verizon's assertion that Plaintiffs' claims would "force" Verizon to increase contributions rests on the same false premise. Plaintiffs do not allege that fiduciaries were required to compel Verizon to contribute more money. They allege that fiduciaries, when deciding how to deploy existing plan assets, were required to consider participant expense relief alongside employer offsets, rather than reflexively privileging the latter. FAC ¶¶ 86–91. ERISA's duties of loyalty and prudence apply precisely at that point of discretionary choice.

## I. The FAC Plausibly Alleges the Committee Breached Fiduciary Duties of Loyalty and Prudence.

### A. Plaintiffs Do Not Seek to Impose a Duty to "Maximize Benefits"; They Plausibly Allege a Disloyal and Imprudent Exercise of Discretion.

Verizon's argument rests on a false premise: that Plaintiffs seek to create a new "benefit" not found in the Plan. Verizon's Memorandum of Law in Support of Motion to Dismiss, Dkt. 42 ("Verizon MTD") at 15-17. They do not. Plaintiffs do not allege that ERISA requires fiduciaries to confer benefits beyond those specified in the Plan, nor that fiduciary duties override plan terms. To the contrary, Plaintiffs' claims arise precisely because the Plan itself authorizes forfeitures to be used either to reduce employer contributions or to pay Plan expenses. FAC ¶¶ 56–60. Paying Plan expenses from forfeitures is not a benefit invented by Plaintiffs; it is a use of plan assets expressly contemplated by the Plan. *See id.*

Verizon's reliance on cases holding that ERISA does not require employers to create or enhance benefits—such as *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996), and *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013)—is therefore misplaced. Those cases stand for the uncontroversial proposition that ERISA protects "contractually defined benefits" and does not permit courts to rewrite plan terms. *See id.* Plaintiffs do not seek to rewrite the Plan or require benefits "nowhere in the plan document," as Verizon's hyperbolically states. Verizon MTD at 15. Plaintiffs seek to enforce ERISA's fiduciary duties where the Plan grants fiduciaries discretion over plan assets.

The same flaw undermines Verizon's contention that Plaintiffs' claims amount to an impermissible effort to "maximize" participants' benefits. Verizon MTD at 16. ERISA does not impose an abstract duty to maximize benefits—but it does require fiduciaries to act loyally and prudently when exercising discretionary authority over plan assets. See 29 U.S.C. § 1104(a)(1)(A)–

(B). Under Second Circuit law, when fiduciaries face a conflict between employer interests and plan-authorized participant benefits, they must set aside sponsor interests and engage in a reasoned, participant-focused decision-making process, supported by independent analysis and consistent with the governing plan documents. *See Donovan v. Bierwirth*, 680 F.2d 263, 271–72 (2d Cir. 1982) (holding that ERISA § 404(a) imposes an exceptionally stringent duty of loyalty and prudence, and that where fiduciaries act under a conflict between corporate interests and plan interests, they bear the burden of demonstrating—through their decision-making process—that their actions were fair to the plan and undertaken solely in furtherance of participants' and beneficiaries' interests).

Here, Plaintiffs allege that fiduciaries exercised that discretion in a manner that consistently relieved Verizon of contribution costs while participants simultaneously bore millions of dollars in administrative expenses that the Plan expressly authorizes forfeitures to defray. FAC ¶¶ 3, 56–61, 75–80, 84–91, 129. That allegation concerns fiduciary administration of plan assets, not the creation of new benefits or the alteration of promised ones. *See id.* Nor does it matter, as Verizon emphasizes, that participants ultimately received all benefits promised under the Plan. Verizon MTD at 16. ERISA's duties of loyalty and prudence govern not only the payment of promised benefits, but also the management of plan assets and expenses. A fiduciary does not satisfy ERISA merely by paying baseline benefits while using plan assets in a conflicted manner that predictably benefits the sponsor at participants' expense. *See Sacerdote*, 9 F.4th at 107–09 (recognizing that ERISA's duties of loyalty and prudence apply to fiduciaries' management of plan assets and expenses, including decisions that may benefit the sponsor, and are distinct from the obligation to pay promised benefits); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-cv-9936, 2016 WL 5957307, at *5–6 (S.D.N.Y. Oct. 13, 2016) (rejecting the argument that fiduciaries satisfied

ERISA by providing plan benefits where plaintiffs alleged that plan assets were managed in a manner that disproportionately benefited the sponsor through excessive and conflicted fees).

Finally, Verizon's assertion that Plaintiffs advance a *per se* rule—under which forfeitures may be used to reduce contributions only if the employer faces financial distress—misstates the FAC. Verizon MTD at 17 n.3. Plaintiffs allege no categorical prohibition. FAC ¶¶ 97–98. Plaintiffs allege that from 2019 through 2023, the Committee repeatedly and uniformly applied forfeitures to reduce Verizon's contribution obligations, even though the Plan authorized forfeitures to be used to pay administrative expenses and even though participants' accounts were charged those expenses during the same period. FAC ¶¶ 84–91. Plaintiffs further allege that Verizon was not experiencing financial distress that might justify prioritizing employer offsets over participant expense relief, but instead reported tens of billions of dollars in profits during the relevant years. FAC ¶¶ 86–89. That is a contextual, process-based claim well within ERISA's fiduciary framework. Those allegations support a reasonable inference that the Committee effectively skipped the threshold fiduciary inquiry—whether forfeitures should be used to benefit participants by defraying expenses—and instead reflexively chose the employer-benefiting option. At the pleading stage, Plaintiffs need not prove motive or internal deliberations; they need only allege facts supporting a plausible inference of disloyal or imprudent process. They have done so here.

### B. Legislative and Regulatory Guidance Does Not Foreclose Plaintiffs' Fiduciary Claims

Defendants next argue that Plaintiffs' claims are implausible because they purportedly conflict with a "settled understanding" of Congress and the Treasury Department that forfeitures in defined contribution plans may be used to reduce employer contributions. Verizon MTD at 17-19. That argument misstates both Plaintiffs' claims and the significance of the cited authorities.

No one disputes that forfeitures *may* be used to reduce employer contributions. Plaintiffs do not contend that ERISA, the Internal Revenue Code, or Treasury regulations prohibit that practice. The question presented here is different: when a plan expressly permits forfeitures to be used either to offset employer contributions or to pay plan expenses, and fiduciaries are vested with discretion to choose between those alternatives, must that discretion be exercised loyally and prudently? Nothing in the legislative or regulatory history Defendants cite answers that question in Defendants' favor.

The authorities Defendants invoke address tax qualification and permissible plan design, not ERISA fiduciary administration. For example, Treasury Regulation § 1.401-7(a) and Revenue Ruling 71-313 explain how forfeitures may be treated for purposes of maintaining a plan's tax-qualified status. They do not purport to define fiduciary obligations under ERISA, nor do they immunize fiduciaries from scrutiny when they exercise discretionary control over plan assets. *See Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *7 (S.D. Cal. May 24, 2024) (tax-qualification rules "do not answer whether fiduciaries complied with ERISA's duties of loyalty and prudence").

Indeed, the very sources Defendants cite underscore that forfeiture use is permissive, not mandatory, in defined contribution plans. Verizon MTD at 18. Revenue Ruling 71-313 expressly states that profit-sharing plans "may provide" that forfeitures reduce employer contributions—not that fiduciaries must always do so. IRS Pub. 4278-B likewise states that forfeitures "may be used to pay administrative expenses and/or to reduce employer contributions." And the Treasury Department's 2023 proposed regulation, besides just being "proposed," confirms that forfeitures may be used for multiple purposes, including paying plan expenses, reducing employer contributions,

or increasing participant benefits. 88 Fed. Reg. 12,282, 12,285 (Feb. 27, 2023). None of these authorities establishes a hierarchy, priority rule, or fiduciary safe harbor favoring employer offsets.

Defendants' reliance on congressional silence is similarly misplaced. Verizon MTD at 19. That Congress has not prohibited the use of forfeitures to reduce employer contributions says nothing about whether fiduciaries may *always* choose that option regardless of participant impact when the plan authorizes alternatives. As multiple courts have recognized, ERISA's fiduciary duties operate independently of tax-qualification rules and apply whenever fiduciaries exercise discretionary authority over plan assets. *See Buescher v. North American Lighting, Inc.*, 791 F.Supp.3d 873, 888 (C.D. Ill. 2025) (rejecting argument that regulatory history forecloses fiduciary claims where plan grants discretion over forfeitures and does not categorically prohibit using forfeitures for employer contributions); *see also Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 947 (N.D. Cal. 2024) ("That Treasury regulations and DOL Guidance would generally permit employers to structure plans to allow forfeitures to cover contributions does not establish that Intuit's implementation by using forfeitures to offset its mandatory Matching Contributions within the parameters of this specific Plan.").

In short, the legislative and regulatory materials Defendants cite confirm only that forfeiture offsets are lawful. They do not resolve—let alone foreclose—the distinct ERISA question presented here: whether fiduciaries who are granted discretion over forfeited plan assets exercised that discretion in the interests of participants rather than the sponsor. At the pleading stage, Plaintiffs have plausibly alleged that they did not.

### C. Plaintiffs Plausibly Allege Disloyal Fiduciary Conduct

Defendants argue that Plaintiffs plead no facts plausibly supporting disloyalty because (i) funding decisions are settlor acts, and (ii) Verizon had no "obligation" to contribute new money

exclusive of forfeitures. Verizon MTD at 20-22. That argument mis-frames both the allegations and the relevant fiduciary inquiry.

Plaintiffs do not challenge Verizon's settlor decisions regarding whether, when, or how much to contribute to the Plan. Nor do they contend that ERISA required Verizon to contribute a fixed amount of "new money" independent of forfeitures. Plaintiffs' disloyalty claim instead arises at a different—and subsequent—stage: the fiduciary allocation of forfeited plan assets after those assets have entered the Plan's trust and are subject to fiduciary control. FAC ¶¶ 56–61, 84–91.

The two-hats doctrine on which Defendants rely confirms, rather than defeats, Plaintiffs' claim. While employers act as settlors when deciding how much to fund a plan, fiduciaries act in a fiduciary capacity when administering plan assets and exercising discretionary authority over their use. *See Pegram v. Herdrich*, 530 U.S. 211, 225 (2000); *Massaro v. Palladino*, 19 F.4th 197, 211–212 (2d Cir. 2021) ("This rule emerges from the principle that 'trustee[s] under ERISA. . . wear different hats," but ERISA requires 'that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.'") (quoting *Pegram*, 530 U.S. at 225). Here, the Plan expressly vests fiduciaries with discretion to apply forfeitures either to reduce employer contributions or to pay Plan expenses. FAC ¶¶ 56–60. That discretionary choice is not a funding decision by Verizon; it is a fiduciary act governed by ERISA § 404(a).

Plaintiffs plausibly allege a conflict of interest at that fiduciary stage. The FAC alleges that Committee members exercised discretionary control over forfeitures in a manner that consistently favored Verizon by offsetting contribution costs, while participants simultaneously bore millions of dollars in administrative expenses that forfeitures were expressly permitted to defray. FAC ¶¶ 3, 65, 75–80, 84–91, 129, 184.

ERISA's duty of loyalty is implicated when fiduciaries administer plan assets in ways that predictably benefit the plan sponsor at participants' expense while possessing discretion to do otherwise. Under Second Circuit precedent, the duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose" of providing benefits to participants. While conflicts of interest alone do not constitute *per se* breaches, fiduciaries violate their loyalty obligations when they act "for the purpose of providing benefits to themselves or someone else" at participants' expense. *See In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litigation*, 842 F. Supp. 2d 614, 649 (S.D.N.Y. 2012); *Bloom v. AllianceBernstein L.P.*, 725 F.Supp.3d 325, 336 (S.D.N.Y. 2024).

Defendants' emphasis on the absence of a fixed "obligation" to contribute new money misses the point. Verizon MTD at 21. Plaintiffs do not allege that forfeiture offsets relieved Verizon of a contractual debt to the Plan. They allege that fiduciaries used plan assets in a manner that functionally substituted forfeitures for participant expense relief, thereby shifting costs to participants while benefiting the sponsor. FAC, ¶¶ 65, 90, 130. ERISA's duty of loyalty does not require a preexisting employer debt; it applies whenever fiduciaries use plan assets in a conflicted manner. *See Rodriguez*, 744 F. Supp. 3d at 947–48 (conflict plausibly alleged where fiduciaries used plan assets in a way that benefited employer, even absent fixed contribution obligation).

Nor does the Plan's definition of "Company-Matching Contributions" and "Profit Sharing Contributions" to include forfeitures foreclose Plaintiffs' claim. Verizon MTD at 21.That definitional structure merely confirms that forfeitures may be used for employer offsets; it does not eliminate fiduciary discretion over whether forfeitures should instead be applied to expenses. Where discretion exists, ERISA requires fiduciaries to exercise it loyally—not mechanically in favor of the sponsor. FAC ¶¶ 56–58, 65, 86–91, 184. Defendants' reliance on *Coulter v. Morgan*

*Stanley*, 753 F.3d 361, 367 (2d Cir. 2014), is misplaced. *Coulter* holds that decisions concerning the "timing and amount of contributions" are settlor acts. *See id.* 367. Plaintiffs do not challenge the timing or amount of Verizon's contributions. They challenge fiduciaries' discretionary use of forfeited plan assets already in the trust. FAC ¶¶ 56-60, 65, 182-183. *Coulter* does not insulate fiduciaries from scrutiny when they administer plan assets in a manner that benefits the sponsor at participants' expense.

Finally, this case is unlike those dismissing disloyalty claims where plaintiffs failed to plead any discretionary fiduciary act distinct from plan design. Unlike in *Hutchins v. HP Inc.,* 767 F. Supp. 3d 912 (N.D. Cal. 2025) ("*Hutchins II*") or *Polanco,* 2025 WL 3003060, Plaintiffs here allege (i) an express Plan authorization to use forfeitures for expenses, (ii) contemporaneous charging of millions of dollars in expenses to participant accounts, and (iii) fiduciaries' consistent choice to apply forfeitures in a sponsor-benefiting manner instead. FAC ¶¶ 56–61, 65, 75–80, 87–88, 90, 130. Those factual allegations plausibly support an inference of disloyal fiduciary conduct at the pleading stage.

### D. Plaintiffs Plausibly Allege a Breach of the Duty of Prudence

Defendants argue that Plaintiffs' prudence claim fails because the Committee allegedly had no obligation to investigate whether using forfeitures to offset employer contributions was in participants' interests, and because Plaintiffs supposedly plead only a conclusory failure to allocate forfeitures to expenses. Verizon MTD at 23-24. That argument rests on the same mistaken premise that animates Defendants' disloyalty analysis: it collapses settlor funding decisions into fiduciary asset-management decisions and ignores the Plan-conferred discretion at issue.

Plaintiffs do not allege that the Committee was required to investigate Verizon's "ability or willingness" to contribute additional funds, nor do they challenge Verizon's settlor decisions

about contribution levels. They allege that once forfeitures entered the Plan's trust and fiduciaries were vested with discretion to apply those assets either to offset employer contributions or to pay Plan expenses, ERISA required a prudent process for exercising that discretion. FAC ¶¶ 56–61, 84–91, 110–116, 135-144. That obligation arises from fiduciary control over plan assets—not from any duty to influence settlor conduct.

The FAC plausibly alleges the absence of a prudent process. Plaintiffs allege that during the relevant period: (i) the Plan expressly authorized forfeitures to be used to pay expenses; (ii) participants' accounts were charged millions of dollars in administrative expenses; (iii) fiduciaries nonetheless consistently applied forfeitures to reduce Verizon's contribution costs without any apparent consideration of participant expense relief or comparative outcomes; and (iv) fiduciaries allowed millions in Plan forfeitures to accumulate in an unallocated plan level account when the Plan's terms gave Plan fiduciaries the discretion to use Plan forfeitures to defray Plan expenses. FAC ¶¶ 3, 56–61, 75–80, 87–88, 110–116, 139. At the pleading stage, those allegations support a reasonable inference that fiduciaries failed to engage in a reasoned, participant-focused evaluation of how forfeitures should be deployed.

Defendants' "speculation" argument misstates the pleading standard. In the Second Circuit, the absence of allegations "referring directly to" fiduciaries' "knowledge, methods, or investigations" is *not* fatal at Rule 12 because ERISA plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. ("PBGC")*, 712 F.3d 705, 718 (2d Cir. 2013). Rather, plaintiffs may plead imprudence by alleging circumstantial facts that, if true, permit a reasonable inference that fiduciaries failed to

engage in an appropriate decision-making process. *See PBGC*, 712 F.3d at 718; *Sacerdote*, 9 F.4th at 107–08.

Nor does the fact that the Plan "contemplates" Verizon's consideration of forfeitures in setting contribution levels eliminate the need for a prudent fiduciary process. Verizon MTD at 23. The Plan's funding provisions address how Verizon may satisfy its contribution formulas; they do not dictate how fiduciaries must exercise their separate discretion over forfeited plan assets. FAC ¶¶ 56–58. A plan's recognition that forfeitures may reduce employer contributions does not answer whether fiduciaries prudently considered using forfeitures for expense relief when participants were contemporaneously bearing those expenses. *See Rodriguez*, 744 F. Supp. 3d at 945 ("Accordingly, it is plausible that the defendants could have breached their duty of prudence even while complying with the terms of the Plan Document.") (citing *Fifth Third*, 573 U.S. at 421). Defendants' reliance on cases dismissing prudence claims based solely on the permissibility of forfeiture offsets is therefore misplaced. Those cases involved allegations that fiduciaries acted imprudently simply by choosing a lawful option. Here, Plaintiffs allege more: a pattern of sponsor-favoring allocations in the face of plan-authorized alternatives and concrete participant expense harm, supporting a plausible inference of an inadequate process. FAC ¶¶ 84–91, 110–116.

Finally, Defendants' contention that Plaintiffs fail to allege that a "proper" investigation would have led to a different outcome misstates ERISA pleading law. Verizon MTD at 24. At the motion-to-dismiss stage, Plaintiffs need not prove that a different decision was inevitable; they need only plausibly allege that fiduciaries failed to engage in a prudent process and that the challenged conduct caused plan-level losses. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255-256 (2008). Plaintiffs have done so here.

### E. Plaintiffs Plausibly Allege Imprudence Based on the Committee's Failure to Timely Use Forfeitures, Consistent with *Buescher*

Defendants argue that Plaintiffs' timing allegations fail as a matter of law because the Plan permits forfeitures to be used in "the Plan Year next following the Plan Year in which the forfeiture[s] occurred," and because IRS guidance regarding annual allocation allegedly supplies no ERISA standard. Verizon MTD at 24-27. That argument is foreclosed by the persuasive analysis advanced by the court in *Buescher*, 791 F. Supp. 3d 873.

In *Buescher*, the court addressed—and rejected—the same argument Defendants advance here. The plan in *Buescher* permitted forfeitures to be used either to pay plan expenses or to offset employer contributions, and defendants argued that retaining forfeitures through year-end was lawful and insulated from ERISA scrutiny. The court disagreed, holding that allegations that fiduciaries failed to timely use forfeitures stated a plausible claim for breach of the duty of prudence, notwithstanding plan language permitting carryover. *See id.* at 891–94. Critically, *Buescher* explained that plaintiffs are not required to plead a violation of plan terms or tax-qualification rules to state an ERISA claim. Rather, IRS and Treasury guidance regarding timely use of forfeitures may be considered as *evidence of what a prudent fiduciary would do*, even if those materials do not themselves create a private right of action. *See id.* at 893–94 (rejecting argument that IRS guidance is irrelevant to ERISA prudence analysis).

*Buescher* squarely held that a fiduciary's failure to timely use forfeitures—where that failure results in participants bearing avoidable expenses—can plausibly constitute imprudence under ERISA § 404(a)(1)(B). *See id.* That is precisely what Plaintiffs allege here. Plaintiffs do not contend that the Committee violated Plan § 4.04 merely by carrying forfeitures past year-end. Rather,

Plaintiffs allege that the Committee's decision to retain forfeitures—while participants simultaneously paid millions in administrative expenses that forfeitures could have defrayed—reflects an imprudent process that failed to act "with the care, skill, prudence, and diligence" required by ERISA. FAC ¶¶ 80–85, 87–88.

Defendants' reliance on proposed Treasury regulations likewise misses the point. Verizon MTD at 26. As *Buescher* makes clear, Plaintiffs are not seeking to enforce tax-qualification standards, nor do they rely on IRS guidance as an independent source of liability. *See Buescher,* 791 F. Supp. 3d at 893–94. Instead, the guidance is relevant because it reflects long-standing fiduciary norms: that leaving forfeitures idle while participants bear expenses is inconsistent with prudent plan administration. *See id.* The existence of a regulatory safe harbor does not establish that retaining forfeitures is prudent under ERISA in all circumstances—particularly where fiduciaries failed to consider participant expense relief at all. FAC ¶ 141.

Finally, Defendants' assertion that participants "received all benefits promised under the Plan" does not defeat Plaintiffs' prudence claim. Verizon MTD at 26-27. As *Buescher* explains, ERISA's duty of prudence is not limited to ensuring that promised benefits are paid; it also governs how fiduciaries manage plan assets and expenses. *See Buescher,* 791 F. Supp. 3d at 891–92. Plaintiffs plausibly allege that the Committee's failure to timely use forfeitures caused participants to incur avoidable expenses and lose the benefit of expense reduction and compounding—an injury fully cognizable under ERISA, regardless of whether base contribution formulas were satisfied. FAC ¶¶ 142-144.

In short, as in the persuasive authority of *Buescher*, Plaintiffs plausibly allege that the Committee's handling of forfeitures—timing included—reflects an imprudent process that favored the

sponsor while participants paid unnecessary Plan costs. That is sufficient to state a claim at the pleading stage.

### F. Plaintiffs Challenge Fiduciary Administration of Plan Assets, Not Settlor Funding Decisions

Defendants argue that Plaintiffs' claims fail because they purportedly challenge only Verizon's decision to "reduce its contributions to the Plan," which Defendants characterize as a non-fiduciary settlor act. Verizon MTD at 27-29. That argument misreads the FAC and collapses two distinct functions—plan funding and plan asset administration—that ERISA treats differently. Plaintiffs' theory is in fact the exact opposite: Section 4.04's "or" and Section 10.11(d)'s "forfeitures-first" direction for trust-paid expenses reflect fiduciary discretion over plan assets and the very conflict ERISA polices, and the FAC plausibly alleges the fiduciaries repeatedly exercised that discretion in Verizon's exclusive interest while participants bore expenses. FAC ¶¶ 56–61, 65, 84–91, 182-183.

So, Plaintiffs do not challenge Verizon's settlor decisions regarding whether, when, or how much to contribute to the Plan. Nor do they contend that Verizon was obligated to contribute a fixed amount of "new money" independent of forfeitures. The FAC instead challenges what happened *after* forfeited contributions entered the Plan's trust and became plan assets subject to fiduciary control. FAC ¶¶ 56–61, 65, 84–91, 182-182. At that point, decisions concerning how those assets are used are fiduciary in nature and governed by ERISA § 404(a).

It is black-letter law that while plan design and funding decisions are settlor functions, the management and disposition of plan assets is a fiduciary function. *See Pegram*, 530 U.S. at 225–226. Once assets are held in trust, fiduciaries act in a fiduciary capacity when exercising discretionary authority over their use—even if the sponsor's prior settlor decisions influence the context in which that discretion is exercised. *See Massaro*, 19 F.4th at 211–212.

Here, the Plan expressly provides that forfeitures held in the trust may be used either to reduce employer contributions or to pay Plan expenses. FAC ¶¶ 56–60. That disjunctive structure necessarily vests fiduciaries with discretion over the use of plan assets. *See id.*, ¶ 57 ("The use of the word 'or' imbues this Plan language with discretion."). Plaintiffs allege that the Committee exercised that discretion in a manner that consistently favored the sponsor—by applying forfeitures to offset contribution costs—while participants contemporaneously bore millions of dollars in administrative expenses that forfeitures were authorized to defray. FAC ¶¶ 3, 65, 75–80, 87–88, 182-183. That allegation challenges fiduciary asset management, not settlor funding levels. Defendants' reliance on *Coulter*, 753 F.3d at 367, is misplaced for the same reason discuss *supra* page 15-16. As discussed above, *Coulter* does not insulate fiduciaries from scrutiny when they administer plan assets in a manner that benefits the sponsor at participants' expense.

Nor does Plaintiffs' reference to the Committee's "allocation" decisions improperly invert the fiduciary-settlor relationship. Verizon MTD at 28. Plaintiffs do not allege that fiduciaries compelled Verizon to reduce its contributions. They allege that fiduciaries chose how to deploy forfeitures—a fiduciary decision—that had the predictable effect of relieving Verizon of contribution costs while shifting expenses to participants. FAC ¶¶ 3, 65, 86–91, 182-183, 190. ERISA does not permit fiduciaries to disregard the participant-level consequences of their fiduciary choices merely because those choices may also affect (or align with) the sponsor's settlor funding decisions. *See In re State Street Bank*, 842 F. Supp. 2d at 649; *Bloom*, 725 F.Supp.3d at 336. Where fiduciaries act with respect to plan assets, their decisions must be made "with an eye single to the interests of the participants and beneficiaries," and may not be justified by employer interests simply because the employer also wears a settlor hat. *See Donovan*, 680 F.2d at 271–72; *Massaro*, 19 F.4th at 211–212.

Defendants' assertion that the Plan reserves all expense decisions to the Company likewise overstates the Plan's terms. Verizon MTD at 28-29. While the Plan permits the Company to decide whether it will pay Plan expenses directly or permit expenses to be paid from the trust, once expenses are paid from the trust, fiduciaries necessarily determine which plan assets are used to satisfy those expenses. FAC ¶¶ 56–60. Plaintiffs allege that fiduciaries had authority to use forfeitures for expense relief and failed to do so while participants bore those costs. FAC ¶¶ 3, 65, 86–91, 182-183, 190. That is a fiduciary allegation, not a challenge to plan funding design.

Defendants' reliance on *Hutchins II,* 767 F. Supp. 3d 912, 922, is also unavailing. Verizon MTD at 29. Unlike the allegations there, Plaintiffs here plead that the Plan affirmatively authorizes forfeitures to be used for expenses, that participants actually paid substantial expenses, and that fiduciaries exercised discretion over forfeitures in a sponsor-favoring manner. FAC ¶¶ 56–61, 75–80, 87–88. Those allegations plausibly implicate fiduciary functions under ERISA and cannot be dismissed as mere challenges to settlor conduct.

Finally, although Defendants rely heavily through their brief on *Polanco*, 2025 WL 3003060, at 8-10, 16, 19, 22-23, 27, that case involved materially different plan language and no allegation that participants actually paid expenses that forfeitures could have defrayed, and it does not control here for at least three reasons. First, *Polanco* did not involve plan language directing that trust-paid administrative expenses "shall be paid from forfeitures," nor did it involve allegations that fiduciaries exercised discretion over forfeitures while participants continued to bear plan expenses that forfeitures could defray. Here, the Plan expressly provides that forfeitures may be used to reduce employer contributions or to pay Plan expenses, and further provides that when expenses are paid from the trust, they "shall be paid from forfeitures." FAC ¶¶ 56–58. Second,

*Polanco* turned on the absence of any allegation that fiduciaries' choices affected participant accounts. The court emphasized that participants there "received everything guaranteed by the plan," and that plaintiffs sought to impose an "unqualified duty" to use forfeitures to pay expenses. *See Polanco,* 2025 WL 3003060, at *6–7. Plaintiffs here allege the opposite: that participants actually paid administrative fees that forfeitures could have defrayed, while fiduciaries used forfeitures to reduce Verizon's contribution costs—conferring a financial benefit on the sponsor without a corresponding participant benefit. FAC ¶¶ 84–91. Third, *Polanco* does not stand for the proposition that plan terms permitting employer offsets immunize fiduciaries from ERISA scrutiny. The Supreme Court has made clear that compliance with plan terms does not itself satisfy ERISA's duties of loyalty and prudence. *See Dudenhoeffer*, 573 U.S. at 421. Plaintiffs' claims here turn on fiduciary discretion and process—not on rewriting the Plan or imposing a categorical rule.

In short, Verizon's "settlor/no discretion" argument rests on a factual and contractual premise that the FAC plausibly negates: the Plan's pre-2024 forfeiture provisions created a discretionary choice over plan assets, and the FAC plausibly alleges fiduciaries exercised that discretion in a sponsor-favoring way while participants bore expenses. FAC ¶¶ 3, 65, 86–91, 182-183, 190. That is fiduciary conduct, and it states a claim under Rule 12.

### G. Plaintiffs Plausibly Plead Plan-Level Injury and Redressability Under ERISA § 502(a)(2)

Defendants contend that Plaintiffs fail to allege a cognizable injury to the Plan because the FAC purportedly challenges only a "reallocation of benefits" or rests on speculation about Verizon's settlor funding decisions. Verizon MTD at 29-30. That argument again mischaracterizes both the allegations and governing law.

Plaintiffs allege plan-level injury in the precise manner recognized by the Supreme Court and the Second Circuit in the defined-contribution context: the misuse of plan assets and the improper charging of plan expenses to participant accounts, resulting in diminished plan assets and lost investment earnings. See *LaRue*, 552 U.S. at 256 (losses to individual accounts caused by fiduciary breach are losses to the plan); *Cedeno v. Sasson*, 100 F.4th 386, 393–94, 399 (2d Cir. 2024) (improper charges to participant accounts constitute plan-level injury remediable under § 502(a)(2)).

The FAC does not allege that fiduciaries should have "allocated benefits differently." It alleges that fiduciaries exercised discretionary control over forfeited plan assets in a self-interested manner that caused participants to bear more than $49 million in administrative expenses that the Plan expressly authorizes forfeitures to defray, while depriving the Plan of the investment earnings and compounding those assets would have generated had they been used for expense relief. FAC ¶¶ 3, 56–61, 75–80, 87–88, 129. That is not a claim about benefit design or redistribution; it is a claim about asset management and expense allocation, which constitutes plan-level injury even though measured through individual accounts. *LaRue*, 552 U.S. at 256; *Cedeno*, 100 F.4th at 393–94.

Defendants' reliance on cases rejecting claims premised on "allocation of benefits" is therefore misplaced. Verizon MTD at 29-30. Those out-of-circuit cases involved challenges to benefit formulas or the distribution of benefits among participants, not allegations that fiduciaries used plan assets in a manner that shifted expenses to participants and depleted plan assets. *See, e.g., Diaz v. Westco Chems., Inc.,* 2023 WL 3615663, at *1 (9th Cir. May 24, 2023).Here, Plaintiffs allege concrete excess debits to participant accounts and corresponding loss to the Plan's trust—injuries that fall squarely within §§ 409 and 502(a)(2). FAC ¶¶ 60–61, 87–88, 129, 144.

Nor does Plaintiffs' alternative theory depend on speculation about Verizon's settlor decisions. Plaintiffs do not allege that fiduciaries caused Verizon to reduce its contributions by exerting influence over independent settlor choices. They allege that fiduciaries' own allocation of forfeitures—plan assets already in the trust—directly caused participants to pay expenses that forfeitures could and should have defrayed, thereby reducing plan assets and participant account balances. FAC ¶¶ 3, 56–61, 65, 80–81, 87–88, 182-183. That causal chain does not require any inference about how Verizon might have acted differently as a settlor; it turns on fiduciary conduct and its direct financial consequences for the Plan.

Even to the extent Plaintiffs allege that the fiduciaries' sponsor-favoring allocation of forfeitures predictably reduced Verizon's need to contribute additional funds, that allegation does not rest on speculation about independent actors. Verizon MTD at 30. It describes the foreseeable economic effect of using plan assets to offset employer costs rather than to pay expenses—an effect that flows directly from the challenged fiduciary decision itself. FAC ¶¶ 65, 129, 182-183. ERISA does not require plaintiffs to plead counterfactual certainty about settlor conduct to establish plan-level injury where fiduciary misuse of plan assets caused concrete losses. *See Cedeno*, 100 F.4th at 395–96.

In short, Plaintiffs allege that plan assets were deployed in a manner that caused avoidable expenses, lost earnings, and diminished plan assets. Those allegations state a plausible plan-level injury under § 502(a)(2). Defendants' effort to reframe the case as a speculative challenge to settlor funding decisions fails at the pleading stage.

## II. Plaintiffs Plausibly Allege Prohibited Transactions Under ERISA § 406(a) and § 406(b)

Defendants contend that Plaintiffs' prohibited-transactions claims fail because (i) the challenged conduct implicates only settlor funding decisions, (ii) the allocation of forfeitures is not a

"transaction" within the meaning of § 406, and (iii) the use of forfeitures to pay benefits can never give rise to § 406 liability. Verizon MTD at 30-33. Each contention misstates the FAC and governing law.

Plaintiffs do not allege that Verizon's decision to set contribution levels—standing alone—constituted a prohibited transaction. They allege that fiduciaries, acting in a fiduciary capacity, exercised discretionary control over forfeited plan assets held in trust and used those assets for the benefit of a party in interest—Verizon—by offsetting its contribution costs, while participants contemporaneously bore plan expenses that forfeitures were authorized to defray. FAC ¶¶ 56–61, 84–91, 190. That conduct implicates fiduciary functions. While plan funding decisions are settlor acts, the use of plan assets after they enter the trust is fiduciary in nature. *See Pegram*, 530 U.S. at 225–226. Defendants' attempt to recharacterize fiduciary asset use as a settlor decision collapses that distinction and would insulate fiduciaries from § 406 scrutiny whenever their asset-use decisions incidentally benefit the sponsor—a result ERISA does not permit. *See In re State Street Bank*, 842 F. Supp. 2d at 649; *Bloom*, 725 F.Supp.3d at 336.

Section 406(a)(1)(D) prohibits a fiduciary from causing the plan to engage in a transaction involving the **"**use by or for the benefit of a party in interest, of any assets of the plan.**"** 29 U.S.C. § 1106(a)(1)(D). Plaintiffs plausibly allege such a use here. Courts have recognized that § 406(a)(1)(D) is not limited to arm's-length "commercial bargains" with third parties. It reaches fiduciary conduct that deploys plan assets in a manner that confers a concrete financial benefit on a party in interest. *See Rodriguez*, 744 F. Supp. 3d at 946–948 (holding that "use" of plan assets for employer's benefit can trigger § 406(a)(1)(D) even absent a traditional sale or exchange). Here, Plaintiffs allege that fiduciaries used forfeited plan assets to reduce Verizon's contribution obligations—thereby benefiting Verizon—rather than to pay plan expenses that participants otherwise

paid. FAC ¶¶ 56–61, 75–80, 87–88. That alleged diversion of plan assets for the sponsor's benefit fits squarely within § 406(a)(1)(D).

Section 406(b)(1) separately prohibits a fiduciary from **"**deal[ing] with the assets of the plan in his own interest or for his own account**."** 29 U.S.C. § 1106(b)(1). Unlike § 406(a), § 406(b) does not require a commercial counterparty or transaction structure; it focuses on conflicted fiduciary use of plan assets. Plaintiffs allege that fiduciaries administered forfeitures in a manner that predictably and repeatedly favored Verizon—their appointing employer—by offsetting its costs, while participants bore expenses. FAC ¶¶ 65, 84–91, 182-183. Courts have repeatedly held that § 406(b) reaches fiduciary conduct involving conflicted asset use even where plan assets do not leave the trust. See *Rodriguez*, 744 F. Supp. 3d at 947–48 (rejecting argument that § 406(b) requires funds to exit the plan).

Defendants continue by arguing that Plaintiffs' claims fail because "payment of benefits" is not a "transaction" under § 406. *See Lockheed*, 517 U.S. at 892–93. Plaintiffs do not dispute that principle—but it does not resolve this case. Plaintiffs do not allege that the mere payment of benefits violated § 406. They allege that fiduciaries used forfeited plan assets in a conflicted manner—choosing sponsor cost-relief over participant expense relief—when the Plan authorized either use. FAC ¶¶ 56–61, 65, 86–91, 182-183. *Spink* addressed plan amendments and benefit payments resulting from plan design; it did not hold that conflicted fiduciary use of plan assets is categorically immune from § 406 scrutiny whenever benefits are involved. Nor does Plaintiffs' theory render all forfeiture offsets *per se* prohibited. Plaintiffs allege a context-specific, fiduciary-capacity use of plan assets that benefited a party in interest and harmed participants. FAC ¶¶ 147-163. That is precisely the sort of conflicted conduct § 406 targets.

Finally, Defendants argue that Plaintiffs' § 406 claims are "too broad" because Treasury guidance permits the use of forfeitures to reduce employer contributions. Verizon MTD at 32-33. Plaintiffs do not dispute that such use is permissible. But permissibility under tax law does not confer immunity from ERISA's prohibited-transactions rules where fiduciaries exercise discretion in a conflicted manner. See *Rodriguez*, 744 F. Supp. 3d at 948 (tax permissibility does not resolve § 406 inquiry). Plaintiffs' claims do not read forfeiture offsets "out of the Plan." They allege that how fiduciaries used forfeitures—given contemporaneous expense charging and sponsor benefit—violated § 406. FAC ¶¶ 157-163. At the pleading stage, those allegations suffice.

## III. PLAINTIFFS PLAUSIBLY PLEAD FAILURE TO MONITOR

Defendants' failure-to-monitor argument rises or falls with their merits arguments. Verizon MTD at 33. Because Plaintiffs plausibly allege that the Committee breached its fiduciary duties and engaged in prohibited transactions, Plaintiffs likewise plausibly allege that Verizon and the Board failed to monitor those fiduciaries. FAC ¶¶ 206–214. In the Second Circuit, a failure-to-monitor claim survives dismissal where plaintiffs plausibly allege underlying fiduciary breaches and a monitoring defendant's authority to appoint, remove, or oversee the breaching fiduciaries. *See Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68–69 (2d Cir. 2016).

The FAC alleges precisely that: Verizon and its Board possessed appointment and oversight authority over the Committee and failed to ensure that forfeiture discretion was exercised loyally and prudently. FAC ¶¶ 38–41, 206–214. Verizon's reliance on the out-of-circuit case of *Nicolas v. The Trustees of Princeton Univ.,* 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017), is misplaced. That non-binding Third Circuit district court decision conflicts with Second Circuit authority recognizing that failure-to-monitor claims are derivative and adequately pled where plaintiffs plausibly allege underlying fiduciary breaches. *See Rinehart*, 817 F.3d at 68–69. The

Second Circuit does not require ERISA plaintiffs, at the pleading stage, to allege detailed facts about internal monitoring processes that are uniquely within defendants' control. Dismissal is therefore unwarranted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss the First Amended Complaint in its entirety.

Respectfully submitted,

Date: February 9, 2026

**WALCHESKE & LUZI, LLC**

*/s/ Paul M. Secunda*
Paul M. Secunda (admitted *pro hac vice*)
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

**CHIRINOS LAW FIRM, PLLC**

Nicole M. Cvercko
11 Broadway, Suite 615
New York, NY 10004
646-559-9952
Email: ncvercko@gmail.com

Tulio D. Chirinos (admitted *pro hac vice*)
20283 State Road 7
Boca Raton, FL 33498
Telephone: 561-299-6334
Email: tchirinos@chirinoslawfirm.com

*Attorneys for Plaintiffs and Proposed Class*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law contains 8,460 words and that it complies with the length restrictions in Local Civil Rule 7.1(c).

*/s/ Paul M. Secunda*
Paul M. Secunda

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 9, 2026, the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss the First Amended Complaint was filed via the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ Paul M. Secunda*
Paul M. Secunda