**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID BILODEAU and ELIZABETH DUDLEY, Individually and as representatives of a Class of Participants and Beneficiaries of the Verizon Savings Plan for Management Employees,

*Plaintiffs*,

v.

VERIZON COMMUNICATIONS, INC.; BOARD OF DIRECTORS OF VERIZON COMMUNICATIONS; VERIZON EMPLOYEE BENEFITS COMMITTEE,

*Defendants*.

Case No. 1:25-cv-07057

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................... ii

PRELIMINARY STATEMENT ..................... 1

ARGUMENT ..................... 2

I. Plaintiffs' Theory of Liability Is Implausibly Broad. ..................... 2

II. Plaintiffs Fail to Plead Non-Conclusory Facts in Support of Their Breach of Fiduciary Duty Claims. ..................... 3

A. Plaintiffs Fail to State a Claim for Breach of the Duty of Loyalty. ..................... 4

B. Plaintiffs Fail to State a Claim for Breach of the Duty of Prudence ..................... 5

C. Defendants' Failure to Allocate Forfeitures by Year-End Does Not Support a Claim. ..................... 6

D. The Case Law that Plaintiffs Cite Is Distinguishable and Unpersuasive ..................... 6

III. Plaintiffs' Theory Does Not Implicate Defendants' Fiduciary Duties. ..................... 7

IV. Plaintiffs Do Not Allege an Injury to the Plan. ..................... 9

V. Plaintiffs Fail to State a Prohibited Transactions Claim. ..................... 10

VI. Plaintiffs Fail to Plead a Breach of Any Duty to Monitor. ..................... 11

CONCLUSION ..................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buescher v. North American Lighting, Inc.*,
791 F. Supp. 3d 873 (C.D. Ill. 2025) ....................6, 7

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ....................9, 10

*Coulter v. Morgan Stanley & Co.*,
753 F.3d 361 (2d Cir. 2014)....................1, 5, 8

*Curtis v. Amazon.com Services, LLC*,
2026 WL 124323 (W.D. Was. Jan. 16, 2026)....................11

*Enstrom v. SAS Institute Inc.*,
2026 WL 459258 (E.D.N.C. Feb. 12, 2026)....................4, 5

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)....................3

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) ....................2

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) .................... *passim*

*Jacob v. RTX Corp.*,
2026 WL 173228 (E.D. Va. Jan. 22, 2026) ....................6, 10

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
552 U.S. 248 (2008)....................9

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)....................10

*Polanco v. WPP Grp. USA, Inc.*,
2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025).................... *passim*

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) ....................6, 7

**PRELIMINARY STATEMENT**

While Plaintiffs argue that they do not seek a *per se* rule barring the use of forfeitures to fund employer contributions, their brief confirms just the opposite. The crux of Plaintiffs' claims is that, when a plan gives a fiduciary a choice to allocate forfeitures to either pay expenses or fund employer contributions, simply choosing to do the latter, without more, constitutes a breach of fiduciary duty. Plaintiffs claim that their theory of liability is narrow because they are only challenging the specific decisions to fund employer contributions made here, but this is an illusory limitation and is contradicted by the First Amended Complaint ("FAC"). Plaintiffs' claims cannot survive unless the Court holds that choosing to use plan assets to fund Verizon's contributions is inherently disloyal and imprudent and thus prohibited by ERISA. *See, e.g.*, FAC ¶ 183. This is exactly the theory that courts around the country, including the Southern District of New York, have repeatedly rejected. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *4 (S.D.N.Y. Oct. 27, 2025).

Plaintiffs' brief also misunderstands the distinction between settlor and fiduciary responsibilities under ERISA. It is black-letter law that a plan's settlor—not its fiduciary—makes all plan funding decisions. *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 367 (2d Cir. 2014). Plaintiffs contend that the conduct they are challenging is fiduciary in nature because it involves allocating plan assets, not making contribution decisions. But once Verizon decided in its settlor capacity to set its funding level based on the presence of forfeitures in the Plan's trust fund—as the Plan's governing document expressly contemplates—the Plan's fiduciaries lacked discretion to interfere with Verizon's settlor decision and use the forfeitures for any other purpose.

For these and other reasons, Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs' Theory of Liability Is Implausibly Broad.

Apparently realizing that courts overwhelmingly have refused to hold that fiduciaries may not use forfeitures to fund employer contributions where they are authorized to do so by the plan, Plaintiffs try to narrow the import of their claims. They maintain that they do not challenge the use of forfeitures to fund employer contributions "in the abstract" but rather challenge Verizon's specific decision to use forfeitures to reduce its contributions. Dkt. 44 ("Opp.") at 1. This is a distinction without a difference.

Plaintiffs' claims are premised on the theory that choosing to use forfeitures to reduce employer contributions, by itself, constitutes a breach of fiduciary duty. *See, e.g.,* FAC ¶¶ 198, 205 (using forfeitures to fund employer contributions constitutes a prohibited transaction under ERISA). Plaintiffs do not allege any facts specific to the decisions made here that made them disloyal or imprudent and fail to explain how their claims could be meaningfully limited to this case. Plaintiffs thus assert nothing more than an "abstract" challenge to the practice of using forfeitures to fund employer contributions. This theory has been rejected by nearly every court that has considered it. Dkt. 42 ("Mot.") at 1–2, 8–10; *see also Polanco*, 2025 WL 3003060, at *4; *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024) ("*Hutchins I*").

Plaintiffs' theory suffers from other deficiencies as well. As set forth in Defendants' motion, Plaintiffs' theory runs afoul of the "settled understanding of Congress and the Treasury Department regarding defined contribution plans." *Hutchins I*, 737 F. Supp. 3d at 862–63; *see also* Mot. at 10–12. Plaintiffs do not contest that it has long been permissible to use forfeitures to reduce employer contributions, but they argue this is not dispositive. Opp. at 11–13. They miss the point. Defendants do not argue that the regulations they cite foreclose Plaintiffs' claims; instead, they argue that these authorities are "relevant … in evaluating the[ir]

plausibility" and whether Plaintiffs have stated a claim that using forfeitures to reduce employer contributions constituted a breach of fiduciary duty. Mot. at 12. Other courts have dismissed identical breach of fiduciary duty claims based on these authorities. *Id.* at 11–12 (collecting cases); *see also Polanco*, 2025 WL 3003060, at *6 (rejecting argument that "Congress and the Treasury Department have blessed plans that let fiduciaries choose how to use forfeitures, but ERISA nonetheless prohibits fiduciaries from exercising that choice").

Finally, Plaintiffs dispute that their theory would force Defendants to violate Plan terms by providing benefits not granted under the terms of the Plan. Opp. at 9–11. However, the Plan specifies that forfeitures can be used for only two purposes: (1) to "reduce Company-Matching Contributions and/or any Profit Sharing Contributions" to the Plan; or (2) to "pay Plan expenses." Dkt. 43-1, § 4.04; Dkt. 43-2, § 4.04. Holding that the former is impermissible under ERISA necessarily would force Defendants to increase benefits beyond the amounts promised under the terms of the Plan by requiring them to *always* pay Plan expenses. This is not permitted by the Plan document or required under ERISA. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014) (ERISA fiduciaries must "follow plan documents so long as they do not conflict with ERISA").

## II. Plaintiffs Fail to Plead Non-Conclusory Facts in Support of Their Breach of Fiduciary Duty Claims.

Plaintiffs largely ignore Defendants' argument that they have failed to plead non-conclusory facts to establish a breach of fiduciary duty. Mot. at 13–17. Instead, Plaintiffs contend that they have satisfied their pleading requirements because they allege that Defendants had discretion to use forfeitures to pay Plan expenses but chose not to do so. Opp. at 15, 17. This argument is meritless.

### A. Plaintiffs Fail to State a Claim for Breach of the Duty of Loyalty.

Plaintiffs challenge Defendants' allocation of forfeitures on the ground that Defendants suffer from a "conflict of interest" in administering the Plan because they purportedly have an interest in allocating forfeitures to "reduce future" contributions by Verizon. FAC ¶ 77; Opp. at 14–15. As Defendants explained in their motion, however, there is no conflict of interest in this case because ERISA assigns all plan funding decisions to the plan sponsor in its *settlor* capacity. Mot. at 13–14. Defendants, as fiduciaries, have no authority or ability to reduce a sponsor's level of funding, and thus they face no conflict of interest when administering the Plan. *Id.* Furthermore, using forfeitures to provide benefits to participants fulfills plan fiduciaries' obligations; it does not constitute a violation. *See Enstrom v. SAS Institute Inc.*, 2026 WL 459258, at *9 (E.D.N.C. Feb. 12, 2026) (dismissing breach of loyalty claims because "using forfeitures to 'reduce' defendants' contributions provides a benefit to Plan participants through the contributions that participants receive.").

Plaintiffs also fail meaningfully to respond to Defendants' argument that there can be no conflict of interest here because Verizon has no obligation to contribute a set amount of new money to the Plan each year. Mot. at 14–15. As Defendants explained, while the Plan specifies the amount of "Company-Matching Contributions" and "Profit Sharing Contributions" made to the Plan, the Plan defines "Company-Matching Contributions" and "Profit Sharing Contributions" to include "forfeitures." *Id.* Based on this provision, Plaintiffs cannot credibly argue that Verizon has an "obligation" to fund the Plan without taking account of forfeitures or that the use of forfeitures to "reduce Company-Matching Contributions and/or any Profit Sharing Contributions" somehow relieved Verizon of a funding commitment. *Id.* at 14–15. Plaintiffs try to sidestep this language by arguing it does not "foreclose" their claims, but they offer no authority to support that argument. Opp. at 15.

Plaintiffs further try to distinguish the case law cited by Defendants, but their characterization of these decisions is inaccurate. For example, Plaintiffs claim that these cases did not involve a "discretionary fiduciary act distinct from plan design." Opp. at 16 (citing *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025) ("*Hutchins II*"), and *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060). This makes no sense; just like the Plan here, both *Hutchins II* and *Polanco* involved plans that reserved "complete and unfettered discretion" to use forfeitures to either reduce employer contributions or pay plan expenses. *Hutchins II*, 767 F. Supp. 3d at 922; *Polanco*, 2025 WL 3003060, at *6 (similar).

**B. Plaintiffs Fail to State a Claim for Breach of the Duty of Prudence.**

Plaintiffs continue to press the argument that Defendants breached their duty of prudence by failing to engage in "a prudent process" to determine "whether using forfeitures to offset employer contributions was in participants' interests." Opp. at 16–17. Yet Plaintiffs fail to cite any authority supporting this argument, and, again, multiple courts have rejected it. *See* Mot. at 16; *see also Enstrom*, 2026 WL 459258, at *9 (finding insufficient similar allegations given that "defendants (1) followed the Plan's language, and (2) provided the benefits required by the Plan to plaintiffs").

Plaintiffs also fail to respond to Defendants' argument that an investigation into Verizon's ability or willingness to increase contributions would be pointless. Mot. at 16–17. As Defendants explained in their motion, "decisions relating to the timing and amount of contributions" are settlor, not fiduciary, decisions. *Id.* at 16 (quoting *Coulter*, 753 F.3d at 367). Settlor decisions do not implicate fiduciary duties, and thus Verizon is entitled to make decisions about Plan funding solely in its own interest, without regard to the interest of Plan participants. *Id.* at 16–17. For this reason, even if Defendants conducted an investigation and determined that Verizon had adequate funds to increase its contributions to the Plan, Verizon—acting as settlor—

would still have had every right to increase, decrease, or maintain its current funding level, regardless of what Defendants' investigation revealed. Plaintiffs do not dispute this. Opp. at 21 ("Plaintiffs do not challenge Verizon's settlor decisions regarding whether, when, or how much to contribute to the Plan."). Because Plaintiffs do not "plausibly allege that a 'proper' investigation would have led to a different outcome," their claims should be dismissed. *Hutchins II*, 767 F. Supp. 3d at 927.

### C. Defendants' Failure to Allocate Forfeitures by Year-End Does Not Support a Claim.

Plaintiffs rely on a single case, *Buescher v. North American Lighting, Inc.*, 791 F. Supp. 3d 873 (C.D. Ill. 2025), to support their argument that Defendants "failed to timely use forfeitures" in violation of ERISA. Opp. at 19–20. *Buescher* is distinguishable because it was based not just on tax qualification standards, but on the plan language itself; as another court recently explained, the plan in *Buescher* contained a provision "requir[ing] forfeitures [to] be used by the end of the year." *Jacob v. RTX Corp.*, 2026 WL 173228, at *5 (E.D. Va. Jan. 22, 2026). There is no such language in the Plan here, and indeed the Plan is expressly authorized to use forfeitures in the following Plan year. Mot. at 17–18. In any event, Plaintiffs' claim fails because the tax qualification standard that Plaintiffs rely on has been superseded. *Id.* at 19.

### D. The Case Law that Plaintiffs Cite Is Distinguishable and Unpersuasive.

Plaintiffs' opposition relies heavily on two cases—*Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024) and *Buescher*, 791 F. Supp. 3d—to argue that the Court should deny Defendants' motion to dismiss. Neither case supports Plaintiffs' arguments.

In *Rodriguez*, the plaintiff alleged that the defendant made certain decisions that were not authorized by the plan document, which the court found to be sufficient to state a cause of action. 744 F. Supp. 3d at 943–44. Here, by contrast, the FAC does not allege that Defendants violated

any Plan terms, rendering *Rodriguez* inapposite. *See Hutchins II*, 767 F. Supp. 3d at 925 (distinguishing *Rodriguez* on this basis); *Polanco*, 2025 WL 3003060, at *7 (same).

In *Buescher*, the court held that the plaintiffs plausibly alleged a fiduciary breach based on the defendants' purported incentive to reduce their employer's "non-elective contributions" to their pension plans. *Buescher*, 791 F. Supp. 3d at 885. The court, however, did not consider whether the plan at issue defined contributions to include forfeitures. *Id.* at 885–86. The court therefore found that the plaintiffs plausibly alleged an obligation on the part of the employer to contribute a set amount of new money to their pension plans each year, creating a potential conflict of interest for defendants. *Id.* at 891–92.

As discussed above, the Verizon Plan defines contributions to include forfeitures, disproving any assertion that Verizon has an "obligation" to contribute a set amount of new money to the Plan. *See supra* at 4. Indeed, Plaintiffs now concede that Verizon had no obligation to contribute additional amounts rather than rely on forfeitures to fund employer contributions. Opp. at 14 ("Nor do [Plaintiffs] contend that ERISA required Verizon to contribute a fixed amount of "new money" independent of forfeitures."). Absent such an obligation on the part of Verizon, Defendants do not have an incentive to relieve Verizon of any funding commitment and thus do not face a conflict of interest. Accordingly, *Buescher* holds that there can be no conflict of interest when employers have "discretion" to decide how much new money to contribute to a pension plan each year, further affirming Defendants' position. 791 F. Supp. 3d at 894–95.

## III. Plaintiffs' Theory Does Not Implicate Defendants' Fiduciary Duties.

Defendants' motion explained that Plaintiffs' breach of fiduciary duty claims do not implicate Defendants' fiduciary duties because the FAC challenges Plan funding decisions, which are made in Verizon's *settlor* capacity. Mot. at 13–14. Plaintiffs contend that they "do

not challenge the timing or amount of Verizon's contributions," Opp. at 16, but that is not what the FAC alleges. The FAC contends that Defendants breached their fiduciary duties by "reducing Verizon's contributions" to the Plan. FAC ¶ 183. The key question is thus: Who decides to reduce the amount of an employer's contributions? The answer is clear: a plan's settlor—not its fiduciary—makes all such funding decisions. *Coulter*, 753 F.3d at 367.

Plaintiffs' opposition confuses the role of a fiduciary. While the allocation of plan assets is a fiduciary act, the fiduciary only implements decisions that are within the settlor's purview. The settlor determines the level of benefits that participants will receive under the plan as well as the amount of plan funding; a fiduciary merely implements those settlor decisions. Accordingly, a fiduciary uses the assets available in the plan to provide the benefits that are due; it is not the role of the fiduciary to seek to increase contributions in order to provide more benefits. And, here, the Plan's fiduciaries did exactly what they were supposed to do: they ensured that each participant receives the benefits due by allocating forfeitures to provide those benefits. Conversely, diverting plan assets in the hope that Verizon would contribute more than it was required—a decision that Plaintiffs concede falls outside the purview of the Plan's fiduciaries—would create a risk that participants would not receive the full amount of their benefits.

*Hutchins II* illustrates this principle. The court there held that the employer defendant did not violate its fiduciary duties by allocating forfeitures to fund employer contributions because the defendant's decision-making was settlor in nature. 767 F. Supp. 3d at 922. Relying on both ERISA and the text of the plan, the court held that the employer "*acting as settlor* determines whether, in a given year, Plan expenses will be paid by [the employer] or charged to Plan participants' accounts." *Id.* Only after this decision is made does the employer "acting as fiduciary implement[] the allocation of the forfeitures." *Id.* Based on this framework, the court

concluded that the employer "(as fiduciary) will only use … forfeitures to pay Plan expenses if [the employer] (as settlor) decided that year that the Plan administrator should use at least some forfeitures to pay Plan expenses." *Id.* The same is true here. Indeed, *Hutchins II* is particularly persuasive because the terms of the plan are similar to the terms of the Verizon Plan. *Compare id.* ("The Company shall have complete and unfettered discretion whether an expense of the Plan or Trust shall be paid by the Participating Companies or out of the Trust Fund."), *with* Dkt. 43-1, § 4.04 ("[A]mounts forfeited in accordance with Section 4.02 shall be applied to reduce Company-Matching Contributions and/or any Profit Sharing Contributions to the Plan for the current Plan Year or the Plan Year next following the Plan Year in which the forfeiture occurred or shall be used to pay Plan expenses in accordance with Section 10.11(d)."); Dkt. 43-2, § 4.04 (same).

**IV. Plaintiffs Do Not Allege an Injury to the Plan.**

Plaintiffs contend that they have alleged an injury to the Plan, but their arguments defy basic math. Plaintiffs do not dispute that (i) the Plan's administrative expenses were reasonable, and (ii) the Plan was ultimately responsible for paying them. Plaintiffs only dispute whether the Plan's expenses should have been paid from the Plan's forfeiture account or from participants' individual accounts. To be sure, Plaintiffs fault Defendants for using assets in participants' individual accounts to pay expenses, but deductions to individual accounts are individual injuries, not Plan injuries. Because the Plan was ultimately required to pay the expenses at issue, there is no world in which *the Plan* could have lawfully retained the assets used to pay expenses, thereby increasing Plan assets.

Plaintiffs' reliance on *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024) and *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008) is misplaced. *Cedeno* itself makes clear that "a plaintiff suing for breach of fiduciary duty under Section 502(a)(2) … *may seek*

*recovery only for injury done to the wronged plan*." 100 F.4th at 399 ("[A] (cleaned up) (emphasis in original). *Cedeno* held only that, where harm to a plan *also* injures participants, those participants may seek relief to remedy both sets of injuries. Unlike in *Cedeno*, Plaintiffs' claims fail under Section 502(a)(2) because they do not allege any injury to the *Plan*.

Finally, while Plaintiffs maintain their alleged injury does not depend on fiduciaries having "caused Verizon to reduce its contributions" to the Plan, that position is belied by the logic of their argument. Opp. at 26. For example, Plaintiffs contend that the Plan was harmed because Defendants "reduc[ed] plan assets," *id.*, but the only way that could occur is if Verizon reduced its employer contributions.

As the Plan's settlor, Verizon exercises independent decision-making authority regarding the amount of money it will contribute to the Plan, and it can make this decision in its own interest, without regard to the interests of Plan participants. Mot. at 20–21. Because Verizon exercises independent decision-making authority with respect to Plan funding, Plaintiffs have no basis to contend that Verizon reduced its contributions because of Defendants' conduct or that Verizon would have increased its contributions but for Defendants' actions. *Id.*

**V. Plaintiffs Fail to State a Prohibited Transactions Claim.**

Plaintiffs contend that they have plausibly alleged prohibited transactions claims, but their arguments ignore binding precedent. Prohibited transactions claims extend only to "commercial bargains" that "present a special risk of plan underfunding because they are struck with plan insiders." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). The payment of benefits is not a "commercial bargain[]." Mot. at 24. Nor is the allocation of assets within a plan. *Id.* at 24–25. For these reasons, nearly every court that has considered the issue has held that the use of forfeitures to offset employer contributions does not give rise to prohibited transactions liability. *Id.* (collecting cases); *see also Jacob*, 2026 WL 173228, at *9-10

(dismissing prohibited transactions claim based on allocation of forfeitures); *Curtis v. Amazon.com Services, LLC*, 2026 WL 124323, at *3 (W.D. Was. Jan. 16, 2026) (same); *Polanco*, 2025 WL 3003060, at *9 (same). Plaintiffs' bare disagreement with this authority is not persuasive. *See* Opp. at 27–28.

More fundamentally, Plaintiffs' prohibited transactions claims fail because the FAC effectively challenges Defendants' use of forfeitures to pay benefits under the Plan. Mot. at 25. Settled law provides that "the payment of benefits is … not a 'transaction' in the sense that Congress used that term" in § 1106. *Spink*, 517 U.S. at 892–93. Because Plaintiffs challenge the use of forfeitures to pay benefits, their prohibited transactions claims fail.

## VI. Plaintiffs Fail to Plead a Breach of Any Duty to Monitor.

Plaintiffs hang their hat on the assertion that, if they plead a breach of fiduciary duty claim, they necessarily plead a failure to monitor claim. Opp. at 29–30. This argument fails because Plaintiffs have not adequately alleged such a claim. Moreover, that Plaintiffs' failure to monitor claim is derivative of their breach of fiduciary duty claims does not excuse Plaintiffs from their obligation to plead facts plausibly supporting their claim that Defendants breached a duty to monitor. Mot. at 26. This claim should be dismissed.

## CONCLUSION

For these reasons, Plaintiffs' claims should be dismissed with prejudice.

Dated: February 25, 2026

Respectfully submitted,

*/s/ William E. O'Neil*

William E. O'Neil
Celin Carlo-Gonzalez
COVINGTON & BURLING LLP
30 Hudson Yards
New York, New York 10001-2170

Tel: (212) 841-1000
woneil@cov.com
ccarlogonzalez@cov.com

Robert Newman* (*Pro Hac Vice*)
Christian J. Pistilli* (*Pro Hac Vice*)
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
cpistilli@cov.com
rnewman@cov.com

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law contains 3,483 words and that it complies with the length restrictions in Local Civil Rule 7.1(c).

*/s/ William E. O'Neil*
William E. O'Neil