UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID BILODEAU and ELIZABETH DUDLEY, individually and as representatives of the Verizon Savings Plan for Management Employees,

Plaintiffs,

-against-

VERIZON COMMUNICATIONS, INC.; BOARD OF DIRECTORS OF VERIZON COMMUNICATIONS; and VERIZON EMPLOYEE BENEFITS COMMITTEE,

Defendants.

25-cv-7057 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Sometimes, an employee leaves a company before their employer's retirement plan contributions have fully vested. When that happens, it frees up money (referred to as "forfeitures") that must be reallocated to some other purpose. Verizon's retirement plan here provided that forfeitures "shall be applied" either (1) "to reduce Company-Matching Contributions" *or* (2) "to pay Plan expenses." Dkt. 38, First Amended Complaint (FAC) ¶ 56. The former would typically benefit Verizon, while the latter would typically benefit plan participants. Verizon chose, year after year, to use the money to reduce its own obligations instead of paying off plan expenses.

Plaintiffs David Bilodeau and Elizabeth Dudley were participants in Verizon's retirement plan, and they claim that Verizon's choice to use forfeitures in this way violated its fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA). Verizon has moved to dismiss their suit for failure to state a claim. Courts across the country have faced similar suits and come out different ways. On the facts alleged here, the Court holds that plaintiffs have stated a claim for breach of fiduciary duty. Verizon's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The Verizon Savings Plan for Management Employees is a defined contribution retirement plan governed by ERISA. FAC ¶¶ 43, 48. Verizon is the plan's sponsor, meaning it sets up the plan and funds it. *Id.* ¶ 47. The Verizon Employee Benefits Committee, meanwhile, serves as the plan's administrator and is responsible for operating the plan on a day-to-day basis. *Id.* ¶¶ 15, 38. That includes making discretionary decisions with respect to how plan funds are used. *Id.* Verizon

and its Board of Directors are responsible for appointing and overseeing the Committee. *Id.* ¶¶ 14, 39.

With more than 125,000 participants and over $27 million in assets, Verizon's plan is one of the largest retirement plans in the country. *Id.* ¶ 16. The plan is funded by a combination of participant and employer contributions. Verizon promises to match employee contributions up to certain amounts, although its contributions are subject to a three-year vesting period. *Id.* ¶¶ 49 & n.4, 53. Participants are immediately vested in their own contributions. *Id.* ¶ 50. If a participant leaves the company before becoming fully vested, the non-vested portion of Verizon's contributions is forfeited. *Id.* ¶ 55. Forfeiture occurs "as soon as administratively practicable" following termination. *Id.*

Section 4.04 of the plan governs what happens with forfeitures. It provides that "any amounts forfeited . . . shall be applied to reduce [Verizon's] Company-Matching Contributions and/or any Profit Sharing Contributions to the Plan . . . ***or*** shall be used to pay Plan expenses in accordance with Section 10.11(d)." *Id.* ¶ 56 (emphasis in complaint). Section 10.11(d) provides that "[e]xpenses paid from the Trust shall be paid from forfeitures allocable under Section 4.04 . . . and, to the extent not paid from such forfeitures, shall be paid from the Trust and allocated to some or all of the Funds on a pro rata basis." *Id.* ¶ 58 (emphasis omitted). So the Committee must first decide whether to use forfeitures to cover Verizon's matching obligations or to pay expenses. *Id.* ¶ 38. And then if there are any expenses left over, those are paid out of participants' funds.

From 2019 to 2023, the Committee allocated at least *some* forfeitures to cover Verizon's employee matching contributions rather than to pay expenses. In 2019 and 2020, Verizon's financial statements say that it applied forfeitures to "offset . . . subsequent employer-matching and profit sharing contributions," and don't say anything about using forfeitures to pay expenses. *Id.* ¶¶ 75–77. From 2021 to 2023, Verizon's statements mention both purposes, without saying how much was allocated to each. *Id.* ¶¶ 78–80. Based on these statements, plaintiffs contend that "it is reasonable to infer that the Committee used all or nearly all forfeitures to offset Verizon's contribution obligations during the relevant period." Dkt. 44 at 5.

In 2024, Verizon amended the Plan to provide that forfeitures "shall be first applied to reduce Company-Matching Contributions and then, if any forfeitures remain thereafter, to reduce any Profit Sharing Contributions." FAC ¶ 67. So the amended plan makes the allocation of forfeitures automatic rather than discretionary, and it removes the possibility of forfeitures being used to pay plan expenses. *Id.* ¶¶ 68–70. Plaintiffs do not challenge this post-amendment state of affairs. They limit their claims to the pre-2024 period, during which the Committee allegedly had discretion to use forfeitures to pay expenses but instead used them to Verizon's benefit. *See id.* ¶ 145.

## LEGAL STANDARDS

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

Although the analysis on a Rule 12(b)(6) motion is generally limited to the allegations in the complaint, the Court may consider documents "incorporated in the complaint by reference." *Tannerite Sports, LLC v. NBC Universal Media LLC*, 135 F. Supp. 3d 219, 225 n.1 (S.D.N.Y. 2015). Here, the Court may consider the Verizon plan documents, which plaintiffs "expressly incorporated by reference" into their complaint. *Revitalizing Auto Communities Env't Response Trust v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).

## DISCUSSION

As an initial matter, the Court recognizes that it is not the first to address these issues. Many district courts have sided with plaintiffs, allowing claims like the ones here to proceed. *See, e.g.*, *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 890–98 (C.D. Ill. 2025); *Russell v. Illinois Tool Works, Inc.*, 2026 WL 332662, at *3–7 (N.D. Ill. Feb. 9, 2026); *In re UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *5–8 (D. Minn. June 22, 2026). But many others have come out in favor of defendants, dismissing for failure to state a claim. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *3–9 (S.D.N.Y. Oct. 27, 2025); *Hutchins v. HP Inc. (Hutchins II)*, 767 F. Supp. 3d 912, 921–27 (N.D. Cal. 2025); *Estay v. Ochsner Clinic Found.*, 2026 WL 809570, at *2–5 (E.D. La. Mar. 24, 2026). No circuit courts have weighed in yet.

These cases are not all carbon copies of each other. Most notably, some involve meaningfully different plan language, and others involve plaintiffs advancing broader theories of liability. Given the sheer number of opinions on both sides (over 20, just counting ones the parties have identified), the Court will not go through and distinguish each decision that comes out differently, nor cite each decision supporting the Court's reasoning. Suffice it to say, these are difficult issues, and the Court found the prior decisions on this issue to be very helpful in arriving at its conclusions.

### I. Plaintiffs state claims against the Committee for breach of its fiduciary duties

#### A. The Committee was wearing its fiduciary hat, not its settlor hat

Plaintiffs' first two claims are for breach of the Committee's fiduciary duties under ERISA (specifically, the duties of loyalty and prudence). The "threshold question" for these claims is "whether [the Committee] was acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). A person acts as a fiduciary under ERISA "to the extent" she "exercises any discretionary authority or discretionary control" regarding the "management" of the plan, the "disposition of its assets," or its "administration." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (quoting 29 U.S.C. § 1002(21)(A)). ERISA's fiduciary duty provisions apply only when the employer is making these sorts of decisions, *i.e.*, wearing its "fiduciary hat." *Pegram*, 530 U.S. at 225.

By contrast, "settlor" decisions are those "regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). This includes functions like "establishing, funding, amending, or terminating a plan." *Id.* at 367. These sorts of decisions don't implicate ERISA's fiduciary duty provisions, since "[n]othing in ERISA requires employers to establish employee benefit plans," nor does the statute "mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). Rather, ERISA serves to "protect contractually defined benefits." *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013).

Verizon argues that the decision here—whether to use forfeitures to satisfy Verizon's matching obligations or to pay plan expenses—is a settlor decision, since it has to do with "plan funding." Dkt. 42 at 21. The Court disagrees. Plaintiffs are not challenging the *design* of the plan; they're challenging its *implementation*. By its terms, Section 4.04 leaves it up to the Committee to decide whether to use forfeitures to cover Verizon's obligations "or" to pay expenses. Dkt. 38, ¶ 56. This is just the sort of discretionary decision over the use of plan funds contemplated by the statute. *See* 29 U.S.C. § 1002(21)(A). While it's true that the Committee's decision has a downstream impact on Verizon's funding (because Verizon will have to put more new money into the plan to meet its contribution obligations if forfeitures are not used for that purpose), that doesn't make it a "funding" decision exempt from ERISA's fiduciary duty provisions.

Now, when Verizon *amended the plan* in 2024 to make forfeitures automatically offset its contribution obligations going forward, *that* was a paradigmatic settlor function. Verizon decided to strip the Committee of the discretion previously imparted by the plan and have forfeitures instead mechanically offset its own contributions, by operation of the plan. That is a decision "regarding the form or structure of the Plan," *Hughes Aircraft Co.*, 525 U.S. at 444, and, consequently, plaintiffs cannot (and do not) bring a fiduciary duty claim based on that decision. But prior to 2024, the Committee was acting as a fiduciary when it decided what to do with forfeitures each year.

This distinction may seem artificial, since Verizon could (and ultimately did) achieve the same result by just amending the plan. But that distinction reflects ERISA's basic bargain: employers choose what benefits to offer, while participants are entitled to have the resulting plan administered loyally and prudently. *See Spink*, 517 U.S. at 887. This allows participants to look at the plan and understand what they have been promised. And it means they can count on those administering it to exercise their discretion in participants' interests. The employer's own interests may shape the terms of the bargain, but they cannot take priority when a fiduciary carries it out.

In finding this to be a fiduciary decision, the Court aligns with the majority of courts to address this question. *See Russell*, 2026 WL 332662, at *3 (collecting authorities and concluding that "[m]ost cases that considered whether forfeiture allocation is a fiduciary function answered the question affirmatively"). Indeed, even one of the decisions Verizon relies on heavily agrees on this score. *See Hutchins v. HP Inc. (Hutchins I)*, 737 F. Supp. 3d 851, 861 (N.D. Cal. 2024) ("Plaintiff attacks not the *decision* to include § 11(h) as a Plan term, but Defendants' *implementation* of that

decision—that is, Defendants exercised discretion and control over Plan assets and thus were making decisions of Plan administration rather than Plan design.").

It's worth pausing on this point, though, before moving on, because it's helpful to understanding the scope of plaintiffs' claims here. Throughout Verizon's briefing, it characterizes plaintiffs as claiming "that it is illegal to use forfeitures to cover the cost of employer contributions under [ERISA]." Dkt. 42 at 1. If that really were plaintiffs' position, the Court agrees it would be difficult to justify. As Verizon points out, and other courts have recognized, "[t]he Treasury Department and Congress have long understood that forfeitures in defined contribution plans 'could be . . . used to reduce future employer contributions.'" *Hutchins I*, 737 F. Supp. 3d at 863 (quoting Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12283 (proposed Feb. 27, 2023)). That guidance also recognizes that forfeitures can be "used to offset administrative expenses of the plan." *Id.* Both are permissible ways to structure a retirement plan under ERISA—the former more favorable to employers, the latter more favorable to plan participants.

Plaintiffs don't dispute any of that. They are not challenging Verizon's 2024 plan or arguing that the use of forfeitures to offset employer contributions is *per se* illegal. Their argument is narrower: "where, as here, the allocation of forfeitures is committed to the discretion of fiduciaries, that decision must be made in accordance with ERISA's fiduciary directives." *Buescher*, 791 F. Supp. 3d at 889. That is not a global theory about how forfeitures can be permissibly used, but rather a narrow consequence of how Verizon chose to structure *this plan*. And it is a natural consequence of ERISA and its fiduciary duty provisions. Employers can be as stingy as they want in designing a retirement plan. But once they've made an option available as part of the plan and put the decision in the hands of a fiduciary, ERISA's protections kick in.

### B. Plaintiffs have plausibly alleged that the Committee breached its fiduciary duties

#### 1. *Duty of loyalty*

Plaintiffs' first claim is that the Committee breached ERISA's duty of loyalty, which "requires plan fiduciaries to act 'solely in the interest of the [plan's] participants and beneficiaries.'" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (quoting 29 U.S.C. § 1104(a)(1)(A)). The theory here is straightforward. Verizon's plan created "a zero-sum game" when it came to forfeiture allocation: "using [forfeitures] to defray other contributions due from the company obviously benefits the company, while administrative expense defrayment benefits the plan participants." *Heet v. Nat'l Med. Care, Inc.*, 819 F. Supp. 3d 63, 67 (D. Mass. 2026); *see also UnitedHealth*, 2026 WL 1786167, at *6. So Verizon's and plaintiffs' interests conflicted regarding the use of forfeitures, and the Committee chose to put Verizon's interests first.

Verizon argues that this theory is "too broad to be plausible." Dkt. 42 at 25. The Court disagrees. Prior to discovery, there's still a lot we don't know—including basic things like how much money was allocated to each purpose, and how those decisions were made. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) ("ERISA plaintiffs generally lack the inside information necessary

to make out their claims in detail unless and until discovery commences." (quotation omitted)). Verizon, though, is asking the Court to hold that, as a matter of law, using forfeitures in this way is *never* a breach of fiduciary duty. What could be the basis for such a sweeping ruling?

First, Verizon relies on the fact that the plan authorizes forfeitures to be used to offset Verizon's contribution obligations, so the Committee was complying with the plan. But fiduciary duties "trump[] the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). After all, fiduciary duties kick in precisely when a plan grants the fiduciary some discretion regarding plan administration—so acting within the scope of that discretion is a *prerequisite* to a fiduciary duty claim, not a defense to it.

Plus, as plaintiffs point out, they are not reading one of the two options out of the plan entirely (or as a trap that would automatically trigger a breach of fiduciary duty). There could be circumstances, plaintiffs concede, where using forfeitures to offset Verizon's contribution obligations *would be* to participants' benefit. For example, if Verizon was struggling financially, and it was unsure if it could meet its matching obligations otherwise, it would make sense to use forfeitures for that purpose. *See Buescher*, 791 F. Supp. 3d at 887 ("In the event of potential financial hardship, allocation of forfeitures toward the employer's nonelective contributions is surely a better result for Plan participants than outright termination of the Plan."). But until discovery, we don't know whether Verizon had a similarly compelling reason to use forfeitures in that way. At this stage, Verizon offers no such explanation for why its use of forfeitures was beneficial to plan participants.

Second, Verizon points to the "decades of legislative and administrative history" supporting the use of forfeitures to offset employer contributions. Dkt. 42 at 10 (capitalization omitted). However, as discussed above, these materials simply show that regulatory guidance "would generally permit employers to structure plans to allow forfeitures to cover contributions." *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 947 (N.D. Cal. 2024). None of the cited sources is discussing the scope of a plan administrator's fiduciary duties when faced with a choice between allocating forfeitures to matching contributions versus expenses. And "[t]he mere fact that Defendants *can* make these allocations under the Plan is not mutually exclusive with the allegation that they were motivated by selfish purposes that breached their duty of loyalty." *Russell*, 2026 WL 332662, at *6.

Third, Verizon argues that plaintiffs fail to plead sufficient facts to support their disloyalty claim. The Court disagrees. Plaintiffs allege that the Committee used $21.9 million in forfeitures in 2019 and $31.8 million in 2020 to reduce Verizon's matching contributions, while using none to pay participants' administrative expenses. FAC ¶¶ 75–77. Participants, including plaintiffs, meanwhile paid administrative expenses from their own accounts, including at least $23 annually in recordkeeping fees. *Id.* ¶¶ 63, 71. And they allege that Verizon did this while generating billions of dollars in annual profits, meaning it could have met its declared contributions without the offsets. *Id.* ¶¶ 117, 124–25. Plaintiffs allege this was a result of a "conflict of interest" on the part of the Committee. *Id.* ¶ 90. Taken together, these allegations are more than enough to support a plausible claim for breach of the Committee's duty of loyalty.

At the end of the day, none of Verizon's arguments are sufficient basis for the broad ruling it seeks at this early stage. Plaintiffs' claim for breach of loyalty will proceed to discovery.

*2. Duty of prudence*

Plaintiffs' second claim is that the Committee breached ERISA's duty of prudence, which requires fiduciaries to exercise "care, skill, prudence, and diligence under the circumstances." 29 U.S.C. § 1104(a)(1)(B). The arguments on this claim largely mirror the arguments on the loyalty claim. Plaintiffs assert that the Committee violated its duty of prudence by "fail[ing] to conduct any investigation" into whether using the forfeited funds to reduce Verizon's contributions was "in the best interest of the participants." FAC ¶ 110. Defendants, meanwhile, argue that plaintiffs fail to plead sufficient facts to support this claim. Once again, the Court disagrees. The Committee's allegedly reflexive use of forfeitures to reduce Verizon's obligations rather than to pay expenses is sufficient to raise a plausible inference that the Committee failed to act with prudence and consider what was in participants' best interest.

The one new argument here has to do with an additional theory from plaintiffs—that the Committee failed to act prudently based on the *timing* of its allocation decisions. Namely, plaintiffs allege that the Committee failed to "allocate[] all of the Plan's forfeitures by the end of each Plan year," leaving plan participants to pay plan expenses that could have been avoided. *Id.* ¶ 191. Plaintiffs base this argument in part on various tax qualification standards. In response, defendants argue that those tax standards are outdated and that the Verizon plan allowed forfeitures to be used in a delayed manner.

This same back-and-forth was hashed out in *Buescher*, and the Court agrees with that court's reasoning. *See* 791 F. Supp. 3d at 893–95. Plaintiffs' claim is not that the cited IRS ruling has the "force of law," but rather that it is indicative of what a prudent fiduciary would do, *i.e.*, "use forfeitures in a timely manner." *Id.* at 893. In other words, "the rolling over of forfeitures from year to year is imprudent" when there are expenses that need to be paid. *Id.*

Plus, it's not clear that Verizon is even correct that the plan allows unused forfeitures to be carried over while paying administrative expenses from other assets. Section 10.11(d) provides that administrative expenses "shall be paid from forfeitures allocable under Section 4.04," except to the extent those forfeitures have "previously" been allocated to participants' accounts. Dkt. 38-1 at 53. Breaking that down, Section 10.11(d) zeroes in on forfeitures that are "allocable" but have not been "allocated" yet—*i.e.*, the forfeitures we're talking about here, which plaintiffs allege the Committee allowed to pile up at the end of each year, unallocated. *Id.* And it mandates that those unused forfeitures "shall be allocated" to expenses. *Id.* Only "to the extent not paid from such forfeitures" should expenses be "allocated to . . . the Funds on a pro rata basis." *Id.* In short, this provision appears to require using unallocated forfeitures for outstanding expenses, even if § 4.04 would otherwise permit carrying forfeitures into the following year. Although plaintiffs do not press this interpretation, it casts doubt on Verizon's contention that the plan's terms authorize the challenged practice.

At this stage, plaintiffs have stated a plausible claim for relief on this basis as well. So plaintiffs' claim for breach of the duty of prudence can proceed on both theories.

### C. Plaintiffs allege an injury to the plan

Verizon's final argument is that plaintiffs' fiduciary duty claims fail because they do not allege a plausible injury *to the plan*. The Second Circuit has held that "a plan participant aggrieved by a breach of duty by a plan fiduciary may seek remedies only on behalf of and for *the plan*." *Cedeno v. Sasson*, 100 F.4th 386, 398 (2d Cir. 2024). And the Supreme Court has stated that ERISA "does not provide a remedy for individual injuries distinct from plan injuries," although it "does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).

The fine distinctions between individual and plan injuries don't matter here, though, because plaintiffs plainly allege an injury to the plan. If forfeitures are used to reduce Verizon's contributions, the company doesn't have to put as much new money into the plan—and the plan is stuck with the bill for expenses. By contrast, if forfeitures are used to pay expenses, Verizon is forced to put more new money into the plan—and the plan will be left with more money than it would otherwise.

Consider a plan that starts with $1,000 in assets, including $100 in forfeitures. Participants are entitled to $200 in matching contributions, and the plan has $100 in administrative expenses. If the forfeitures are used towards the matching contributions, Verizon only has to add $100 in new money to provide the promised $200. The plan's assets rise to $1,100, but paying the $100 expense bill brings them back to $1,000. If the forfeitures instead pay expenses, Verizon must contribute the full $200 in new money to provide the same match. The plan then ends with $1,100: its original $1,000, plus Verizon's $200 contribution, minus $100 in expenses. The same match is credited and the same expenses are paid, but the plan ends up $100 better off.

For this reason, plaintiffs also allege a plausible injury to the plan.

## II. Plaintiffs also state a failure-to-monitor claim against Verizon and the Board

While plaintiffs' fiduciary duty claims are brought solely against the Committee, they also bring a failure-to-monitor claim against Verizon and the Board. FAC ¶¶ 208–14. Plaintiffs allege that Verizon and the Board had a "duty to monitor" the Committee "and to take prompt and effective action to protect the Verizon Plan in the event that these individuals were not fulfilling those duties." *Id.* ¶ 210.

This claim is derivative of plaintiffs' fiduciary duty claims, *see Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016), and Verizon makes no new arguments here. Courts have generally allowed these claims to proceed when an underlying claim of breach survives dismissal. *See Buescher*, 791 F. Supp. 3d at 898; *Russell*, 2026 WL 332662, at *7; *UnitedHealth*, 2026 WL 1786167, at *7. So the Court denies the motion to dismiss this claim as well.

### III. Plaintiffs fail to state a prohibited-transaction claim against the Committee

Plaintiffs also try to package their allegations as a violation of ERISA's prohibited-transaction provisions in 29 U.S.C. § 1106. *See* FAC ¶¶ 196–207. Subsection (a) prohibits certain transactions between the plan and a party in interest, *see* 29 U.S.C. § 1106(a), while subsection (b) prohibits transactions between the plan and a fiduciary, *see id.* § 1106(b). Plaintiffs' claims here fail because they do not allege any prohibited "transaction."

The Supreme Court has explained that the "payment of benefits" does not count as a "transaction" for purposes of these provisions. *See Spink*, 517 U.S. at 892–93. The Court pointed out that these provisions mention "the 'sale,' 'exchange,' or 'leasing' of property, 29 U.S.C. § 1106(a)(1)(A); the 'lending of money' or 'extension of credit,' § 1106(a)(1)(B); the 'furnishing of goods, services, or facilities,' § 1106(a)(1)(C); and the 'acquisition . . . of any employer security or employer real property," § 1106(a)(1)(E), with a party in interest." *Id.* at 893. In other words, the "transactions" these provisions are concerned with are "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Id.*

Plaintiffs argue that the allocation of forfeitures here constitutes a prohibited transaction. But that decision has no counterparty and involves no "commercial bargain[]" being "struck." *Id.* In fact, it only involves the allocation of funds *within the plan*. If this counted as a "transaction," it's hard to say what wouldn't. At the very least, the allocation of forfeitures looks more like the "payment of benefits" than it does the different sorts of "transactions" enumerated in the statute.

The closest plaintiffs get is § 1106(a)(1)(D), which prohibits any "transaction" that "constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." In isolation, this broadly worded subsection might be a sufficient hook for plaintiffs' claim. But read in context next to the other prohibited "transactions," and in light of the Supreme Court's guidance on this point, the better reading is that this subsection doesn't broaden the definition of "transaction" to the point that it can cover the allocation decision here.

Other courts, including those that sided with plaintiffs on their fiduciary duty claims, agree on this score. *See Buescher*, 791 F. Supp. 3d at 895–98; *UnitedHealth*, 2026 WL 1786167, at *7–8; *Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772, at *11–12 (N.D. Ill. Jan. 26, 2026). Because the problem here is legal rather than factual, plaintiffs' prohibited transaction claims will be dismissed with prejudice.

## CONCLUSION

For these reasons, Verizon's motion to dismiss the amended complaint is GRANTED with respect to the prohibited-transaction claims and otherwise DENIED. Verizon's motion to dismiss the original complaint is DENIED as moot.

On or before October 14, 2026, the parties should meet and confer and file by letter-motion a case management plan with a schedule for discovery, class certification, and summary judgment.

The Clerk of Court is respectfully directed to close Dkts. 34 and 41.

SO ORDERED.

Dated: September 30, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge